IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| TORREY GRIFFIN, individually, as the legal guardian of minors RWR, ABG, and KRR, and as representative of the Estate of Shannon Rewis, deceased,<br><br>   Plaintiff,<br><br>v.<br><br>COFFEE COUNTY, et al.,<br><br>   Defendants. | CIVIL ACTION NO.: 5:19-cv-92 |

### **O R D E R**

This matter is before the Court on Defendants' Motions to Exclude Expert Testimony of Dr. Kris Sperry. Docs. 87, 95, 100.[1] The parties have fully briefed the issues. Docs. 118, 137. For the following reasons, the Court **GRANTS** Defendants' Motions to Exclude Expert Testimony of Dr. Kris Sperry.

### BACKGROUND

This case arises out of the death of Shannon Rewis while he was in custody at the Coffee County Jail following his arrest on October 20, 2017. Doc. 1. Plaintiff brings a claim for medical malpractice and for deliberate indifference to a serious medical need. Id. Plaintiff has

---

[1] Though all Defendants have joined in moving to exclude Dr. Kris Sperry, only one of those Motions contains substantive arguments. See Doc. 87.

identified Dr. Kris Sperry, a forensic pathologist, as an expert.[2]  Plaintiff seeks to have Dr. Sperry testify: (1) Mr. Rewis would not have died if he had been provided earlier treatment for methamphetamine overdose; (2) the effect of Defendant Angela Denise Waldron, LPN's failure to ensure Plaintiff immediately received medical care after learning he ingested or consumed two grams of methamphetamine; and (3) what treatment would have been provided if Mr. Rewis had been transported to the hospital.  Doc. 118-9 at 6–7.  Defendants challenge Dr. Sperry's ability to offer these opinions under Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), and Rule 702.  Defendants assert Dr. Sperry is not qualified to testify regarding the treatment or survivability of a methamphetamine overdose and Dr. Sperry's opinions are unreliable and speculative and, thus, seek to have his opinions excluded.  Docs. 87, 137.

## LEGAL STANDARD

The United States Supreme Court's holding in Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony.  Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).  In this Circuit, courts routinely look to three elements to determine if an expert is qualified under Daubert and Rule 702.  As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

---

[2]     The fact Mr. Rewis died of methamphetamine toxicity appears undisputed.  Rather, the parties dispute whether Dr. Sperry can testify that earlier or different intervention would have prevented his death.

2

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted).  "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate."  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  The trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, training, or education."  Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010).  The expert need not have experience precisely mirroring the case at bar in order to be qualified.  Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001).  However, where an expert does have experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony.  Frazier, 387 F.3d at 1261.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.  Daubert, 509 U.S. at 593–94.  However, these factors are not exhaustive, and "a federal court should consider any additional factors that may advance its Rule 702 analysis."  Quiet Tech., 326 F.3d at 1341.  At all times in this flexible inquiry, the court's focus must be "solely on principles and methodology, not on the conclusions that they generate."  Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016) (citation omitted).

Finally, as to the third Daubert factor, expert testimony is likely to assist the trier of fact to the extent "it concerns matters beyond the understanding of the average lay person and

logically advances a material aspect of the proponent's case." Kennedy v. Elec. Ins. Co., Case No. 4:18cv148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing Daubert, 509 U.S. at 591); Frazier, 387 F.3d at 1262–63.  Rule 702 permits experts to make conclusions based on competing versions of the facts, but those conclusions must still assist the trier of fact by explaining something that is "beyond the understanding of the average lay person.'" Jackson v. Catanzariti, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing Frazier, 387 F.3d at 1262).  Expert testimony generally will not help the trier of fact "when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id. (quoting Cook v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1111 (11th Cir. 2005)).  Such testimony "is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." Hibiscus Assocs. Ltd. v. Bd. of Trs. of Policemen & Firemen Ret. Sys., 50 F.3d 908, 917 (11th Cir. 1995) (citations omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999); McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1257 (11th Cir. 2002).  However, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of proffered evidence." Quiet Tech., 326 F.3d at 1341.  Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

**DISCUSSION**

In his report, Dr. Sperry opines Mr. Rewis' condition would have been treatable and he would not have died, if he had been transported to the hospital when he first disclosed his methamphetamine use or consumption to Defendant Waldron.  See Doc. 118-9 at 6–7.  Dr. Sperry further opines Defendant Waldron's failure to arrange immediate transport to the hospital was the actual and proximate cause of Mr. Rewis' death.  Id. at 7.  Finally, Dr. Sperry concludes if Mr. Rewis had been transported to the emergency room within one hour following Defendant Waldron's examination, Mr. Rewis would have survived, because lifesaving treatment was available at the emergency room and an appropriate physician would have initiated that treatment.  Id.  Defendants argue Dr. Sperry lacks the qualifications necessary to give this expert testimony and that his opinion is not reliable.  Doc. 87; Doc. 137.

**I.     Dr. Sperry Is Not Qualified**

Defendants argue Dr. Sperry lacks the requisite qualifications with respect to the clinical treatment of a methamphetamine overdose patient.  Doc. 87 at 10.  For this reason, he cannot offer expert opinions about the treatment an emergency room physician would have provided to Mr. Rewis.  Id.  Plaintiff responds that Dr. Sperry is an experienced and well-credentialed forensic pathologist, a field of specialty that deals with medical causation, and, thus, Dr. Sperry has the experience needed to opine on the cause of Mr. Rewis' death.  Doc. 118 at 15.

Dr. Sperry received his medical degree from the University of Kansas in June 1978.  Doc. 118-9 at 9.  He interned for a year at Allentown Hospital in Allentown, Pennsylvania, and performed his pathology residency at the University of New Mexico School of Medicine from July 1981 to June 1985.  Id.  He was a fellow in forensic pathology at the New Mexico Office of the Medical Investigator for the remainder of 1985.  Id. at 10.  He has been employed in the

medical examination field in multiple capacities since 1986.  Id.  He had a hospital appointment at the University of New Mexico Hospital from 1986 to 1989 as an associate medical staff in the pathology department.  Id. at 15.  For most of his career, Dr. Sperry served a medical examiner, first in Georgia.  Id. at 11.  Dr. Sperry served as the Chief Medical Examiner for the State of Georgia from 1997 to 2015.  Id.

Plaintiff asserts Dr. Sperry is qualified to examine a dead body to determine and opine on a cause of death, and, therefore, he is qualified to offer the opinions described.  Plaintiff is only partially correct.  Dr. Sperry is qualified to testify about how one can determine whether Mr. Rewis experienced methamphetamine toxicity and whether Mr. Rewis' death resulted from methamphetamine toxicity.  Doc. 118 at 8–12, 15–16.  In other words, Dr. Sperry is qualified to testify about how an examiner evaluates a body, determine indicators of methamphetamine toxicity, and opine on how methamphetamine toxicity can cause death, and then apply those concepts to Mr. Rewis' circumstances.[3]  Such testimony concerns the steps involved in post-mortem evaluations and the scientific chain of events that could result in death and is typically within the scope of a qualified forensic pathologist's expertise (i.e., determining cause and manner of death).

However, Dr. Sperry's opinions in this case go further.  Dr. Sperry seeks to testify about: what would have occurred if Defendant Waldron had immediately ordered Mr. Rewis transported to a hospital; the medical treatment Dr. Sperry believes should have been provided to Mr. Rewis while Mr. Rewis was alive; when those treatments should have been provided; and

---

[3]   While Dr. Sperry is qualified to offer these opinions, he does not seek to do so.  In fact, Plaintiff acknowledges, "The cause of Mr. Rewis' death is undisputed."  Doc. 118 at 4.  Plaintiff explains the parties all agree methamphetamine toxicity caused Mr. Rewis' death, and that conclusion is supported by an autopsy conducted by a Georgia Bureau of Investigation forensic pathologist.  Id.

6

whether those treatments would have prevented Mr. Rewis' death. See Doc. 118-9 at 6–7.  In short, Dr. Sperry seeks to testify about what could have been done—and in Dr. Sperry's opinion, what should have been done—to treat Mr. Rewis and, potentially, prevent his death.  This testimony is not within the typical scope of a forensic pathologist's expertise.  The Court must, therefore, determine whether Dr. Sperry is qualified to offer opinions on these topics.

It is true "an expert's training does not always need to be narrowly tailored to match the exact point of dispute in a case." Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008).  A "proffered physician need not be a specialist in the particular medical discipline to render expert testimony relating to that discipline." United States v. Ruan, 966 F.3d 1101, 1162 (11th Cir. 2020) (citations omitted).  However, "a physician must, at a minimum, possess some specialized knowledge about the field in which he is to testify." Everett v. Georgia-Pacific Corp., 949 F. Supp. 856, 857 (S.D. Ga. 1996).

Dr. Sperry lacks the qualifications to opine on treatment for a methamphetamine overdose or the effect of any treatment on a patient's outcome.  Dr. Sperry has not treated a patient in an emergency room setting in nearly 40 years.  The last time Dr. Sperry triaged a patient in an emergency room was in December 1982.  Doc 87-1 at 3.  He has otherwise never practiced as an emergency room physician and admits he does not have specific training in that field. Id. at 9.  Dr. Sperry also acknowledged he would defer to an emergency room physician or a critical care physician regarding the timing and appropriateness of any treatments for methamphetamine toxicity. Id. at 12.  Dr. Sperry does not order the treatment he opined Mr. Rewis should have received that would have resulted in his survival.  Doc. 118-9 at 7; Doc. 87-1 at 12 (confirming Dr. Sperry does not order or perform sedation, support, gastrointestinal decontamination, and seizure prophylaxis).  Dr. Sperry reviewed medical literature to render his

7

opinion, but his review of medical literature does not make him qualified. United States v. Paul, 175 F.3d 906, 912 (11th Cir. 1999) (explaining an expert who lacks the relevant skills, experience, training, and education does not become qualified to testify as an expert merely because he read relevant articles). Plaintiff has not established Dr. Sperry is qualified to opine on what treatments could or should have been given to Mr. Rewis or whether those treatments would have prevented Mr. Rewis' death.

The parties point to cases where Dr. Sperry was either permitted to testify or excluded from testifying and argue the cases support their respective positions. Defendants primarily rely on Wilson v. City of Douglasville, No 1:17-CV-634, Ord. at 7–9 (N.D. Ga. Sept. 26, 2019), a case from the Northern District of Georgia in which the Honorable William M. Ray, II considered whether Dr. Sperry was qualified to testify on the initial treatment from a suspected exercise collapse associated with sickle cell trait ("ECAST") and whether the plaintiff would have survived if he had been treated promptly or transported to a hospital. Doc. 87 at 7, 12–13. In Wilson, the court acknowledged Dr. Sperry, as a forensic pathologist, investigates questionable deaths to determine the cause of those deaths. However, the court noted Dr. Sperry does not treat patients and is not involved in the recommendation of medical treatment or preventative procedures. Id. at 8–9. Based on this, Judge Ray concluded Dr. Sperry was not qualified to determine the proper emergency treatment for and the potential survivability of an ECAST event. Id. at 9. The reasoning in Wilson applies with equal force in this case. Dr. Sperry's knowledge, training, skill, and experience relate to determining a cause and manner of death, not proper emergency treatment for methamphetamine overdose or the likely effect of that treatment.

Plaintiff attempts to distinguish Wilson from the instant case. Plaintiff asserts Dr. Sperry was excluded in Wilson because of the nature of ECAST, which is a rare and poorly-understood medical condition. Doc. 118 at 20–21. The court in Wilson acknowledged and discussed this issue, but only in the context of finding Dr. Sperry's opinion unreliable, not when determining whether he was qualified. In terms of qualifications, the Wilson court stated unambiguously, "[N]othing in Dr. Sperry's training, experience, or education makes him qualified to opine as to the proper emergency treatment for and the potential survivability of an ECAST event[.]" Wilson, No 1:17-CV-634 at 9. Wilson is instructive and supports the exclusion of Dr. Sperry in this case based on his lack of qualifications. See also Everett, 949 F. Supp. at 857 (concluding a family medicine and surgery doctor was unqualified to testify about toxicology since he possessed no specialized knowledge or training in that field).

Plaintiff points to cases where Dr. Sperry was permitted to testify, but these cases have little bearing on Defendants' Motion because the cases do not address Daubert or do not consider whether Dr. Sperry was qualified to testify. Plaintiff relies on Harmon v. Hickman Cmty. Healthcare Servs., Inc., 2018 WL 3267080, at *8–9 (Tn. Ct. App. June 29, 2018).[4] Doc. 118 at 16–17. The court in Harmon considered whether Dr. Sperry could testify as an expert under Tennessee law and did not consider Daubert or the Federal Rules of Evidence.

Plaintiff also points to Frederick v. Swift Transp. Co., 591 F. Supp. 2d 1149, 1151 (D. Kan. 2008), *aff'd*, 616 F.3d 1074 (10th Cir. 2010). In Frederick, Dr. Sperry testified about a urine test provided to the operator of a motor vehicle after an accident, which yielded a positive

---

[4]   The Tennessee Supreme Court reversed the appellate court's decision in Harmon on other grounds but did not address the appellate court's finding on whether Dr. Sperry was qualified to testify as an expert. Harmon v. Hickman Cmty. Healthcare Servs., Inc., 594 S.W.3d 297, 304 (Tenn. 2020), *reh'g denied* (Feb. 21, 2020).

result for methamphetamine and amphetamine, a related toxicology report, and the operator's impairment at the time of the accident.  Dr. Sperry's qualifications were not challenged in Frederick.  The opposing party challenged the reliability and relevance of Dr. Sperry's opinions and the methodology he used to form his opinions about impairment.

Plaintiff also cites Waldron v. Spicher, 349 F. Supp. 3d. 1202, 1222 (M.D. Fla. 2018).  In Waldron, Dr. Sperry sought to opine about when and how an inmate died.  The court concluded that, as a forensic pathologist with vast experience in hanging deaths and death by asphyxiation, he was qualified to render opinions on these issues.

None of the cases cited by Plaintiff—Harmon, Frederick, or Waldron—provide any insight into the issue presently before the Court.  In Harmon, the court only considered Dr. Sperry's qualifications under Tennessee law.  In Frederick, there was no challenge to Dr. Sperry's qualifications.  In Waldron, while the court determined Dr. Sperry was qualified to offer his expert opinions, that case is distinguishable.  There, Dr. Sperry sought to testify on the cause and manner of death—matters within the typical areas of expertise for a forensic pathologist.  Here, Dr. Sperry seeks to testify about emergency medical treatment that he contends should have been provided to Mr. Rewis, and, importantly, the likely effect of that treatment.  Plaintiff has not shown Dr. Sperry has any experience in these areas.

Plaintiff also points to other cases—not involving Dr. Sperry—and argues medical experts in those cases were permitted to offer similar opinions.  Doc. 118 at 12 n.34.  The cases Plaintiff cites are not controlling or persuasive as to Dr. Sperry's qualifications.  Plaintiff points to Sandoval v. County of San Diego, 985 F.3d 657, 665 (9th Cir. 2021), but the Ninth Circuit in that case did not address any Daubert or Rule 702 challenges.  Plaintiff also cites Ortiz v. City of Chicago, 656 F.3d 523, 536 (10th Cir. 2011), but the expert and his opinions in that case were

very different from Dr. Sperry and his opinions. Critically, in Ortiz, the court expressly acknowledged the expert was never deemed unqualified by the trial court. At most, these cases demonstrate some experts may be qualified to render opinions like the ones Dr. Sperry intends to offer. But the Court's inquiry at this juncture is not whether other medical experts in other cases have rendered similar opinions; the relevant inquiry is whether Dr. Sperry is qualified to render his proffered opinions.

Plaintiff also tries to bolster her position by arguing Dr. Sperry's opinion is largely consistent with opinions from other care providers who have considered the facts of this case and medical literature, generally.[5] Doc. 118 at 29. In other words, Plaintiff suggests Dr. Sperry should be permitted to offer his opinions because the opinions are correct or, at least, supported by other doctors. But in a Daubert inquiry, a court is not concerned with the correctness of an expert's opinion. Instead, the focus is on whether the expert is qualified to give the opinion, whether the expert's methodology is reliable, and whether the opinion is helpful. Seamon, 813 F.3d at 988. Contrary to Plaintiff's arguments, whether Dr. Sperry's opinion is consistent with medical literature or opinions from other care providers in this case has no bearing on whether Dr. Sperry is qualified. Herman Miller, Inc. v. Belnick LLC, No. 1:18-CV-05012, 2021 WL 2582534, at *1 (N.D. Ga. Jan. 4, 2021) ("An expert's opinion should not be excluded on the basis of its correctness, and it is not part of the Court's gatekeeping function 'to make ultimate conclusions as to the persuasiveness of the proffered evidence.'") (quoting Quiet Tech., 326 F.3d at 1341). An expert could rely on sources like medical literature, but not to show he is qualified

---

[5] Defendants dispute whether Dr. Sperry's opinions are actually consistent with opinions from other doctors. Doc. 137 at 9–11. The Court need not resolve this dispute because the correctness or consistency of Dr. Sperry's opinions is not germane to his qualifications.

to offer such opinions, even where the medical literature is consistent with an expert's opinions. Paul, 175 F.3d at 912. Ultimately, these issues have no bearing on Dr. Sperry's qualifications.

Plaintiff contends Defendants are advancing a narrow position not supported by the law—namely, that only an emergency room physician or one specific type of doctor is qualified to testify about whether certain treatments would have prevented a death. Doc. 118 at 14. Plaintiff's characterization of Defendants' position is incorrect. Defendants assert Dr. Sperry does not have qualifications in emergency medicine and emphasize that Dr. Sperry testified he would defer to someone who did to determine appropriate treatment for a methamphetamine overdose. Doc. 87 at 9–13. That is the only issue before the Court. The Court need not determine who else would be qualified to offer this testimony. The inquiry is plainly focused on whether Dr. Sperry is qualified to testify about the appropriate treatment for a methamphetamine overdose or what could have prevented Mr. Rewis' death.

Finally, Plaintiff's argument that the proper way to attack Dr. Sperry's qualifications is through cross-examination is incorrect. Doc. 118 at 22 (arguing cross-examination is the proper way to attack an expert's lack of credibility). Whether Dr. Sperry is qualified is a threshold question, and vigorous cross-examination is no substitute. It is Plaintiff's burden to pass this threshold inquiry and establish that Dr. Sperry is qualified to testify. Allison, 184 F.3d at 1306.

## II.   Dr. Sperry's Methodology Is Not Reliable

Even if Dr. Sperry were qualified to give his proffered opinion, Dr. Sperry's opinion is unreliable and speculative. Essentially, Dr. Sperry's methodology was the review of medical literature and application of his experience, bolstered by Dr. Sperry's contention that Dr. Sinclair agreed with his opinion. Doc. 118 at 23–40. When an expert opinion is based on experience, a court may decide such testimony is reliable based upon that expert's personal knowledge or

experience. Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1338 (11th Cir. 2009); see also Kumho, 526 U.S. at 151. For the opinion to be deemed reliable under this rubric, Dr. Sperry must "explain how [his] experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (emphasis in original) (citation omitted). In other words, to admit Dr. Sperry's opinions, he must be able to demonstrate a sufficient connection between his experience and the opinions he offers.

Here, Dr. Sperry does not demonstrate a connection between his experience and the opinion he offers. As explained above, Dr. Sperry does not have experience in treating drug overdoses or determining whether early intervention would have prevented a drug overdose. Thus, Dr. Sperry fails to connect his experience to the opinion he offers. See Frazier, 387 F.3d at 1261 (noting where a witness relies on experience in forming an opinion, the witness must link that experience to his ultimate conclusion and explain how the experience is applicable to the case at bar). Moreover, whether Dr. Sperry's conclusions are correct, or supported by Dr. Sinclair, does not demonstrate Dr. Sperry's opinions are reliable. See Seamon, 813 F.3d at 988 (noting the court's focus must be "solely on principles and methodology, not on the conclusions that they generate"). This is true even if other experts or healthcare providers agree with Dr. Sperry's conclusions. Accordingly, Dr. Sperry's opinion should be excluded as unreliable.

## CONCLUSION

The Court finds Plaintiff has failed to establish that Dr. Sperry is qualified to offer these disputed opinions or that his opinions are reliable. Thus, the Court **GRANTS** Defendants' Motions to Exclude. Docs. 87, 95, 100. Dr. Sperry is not permitted to offer the following expert opinions: (1) Mr. Rewis would not have died if he had been provided earlier treatment; (2) the

effect of Defendant Angela Denise Waldron, LPN's failure to ensure Plaintiff immediately received medical care after learning he ingested or consumed two grams of methamphetamine; and (3) what treatment would have been provided if Mr. Rewis had been transported to the hospital.

**SO ORDERED**, this 7th day of June, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA