**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

TORREY GRIFFIN, individually, as the legal
guardian of minors RWR, ABG, and KRR, and
as representative of the Estate of Shannon
Rewis, deceased,

             Plaintiff,

    v.

COFFEE COUNTY, et al.,

             Defendants.

CIVIL ACTION NO.: 5:19-cv-92

## O R D E R

This matter is before the Court on Plaintiff's Daubert Motion to Exclude or Limit

Experts' Testimony.  Doc. 96.  Plaintiff seeks to exclude in whole or in part the testimony of

three experts Defendants intend to introduce at trial: (1) Dr. Robert Hall; (2) Dr. Todd Wilcox;

and (3) Dr. Richard Kleiman.  Id.  The parties have fully briefed the issues.  Docs. 115, 136, 153,

154, 157.  For the following reasons, the Court **GRANTS in part** and **DENIES in part**

Plaintiff's Motion.  Doc. 96.

A summary of the Court's rulings is as follows:

1.     The portion of Plaintiff's Motion concerning Dr. Robert Hall is **DENIED**.  Dr.
        Hall is permitted to testify on what a physician or medical supervisor likely would
        have directed Defendant Waldron to do if Waldron had contacted such an
        individual, consistent with the Federal Rules of Evidence and other applicable
        law.  This testimony is relevant to Plaintiff's medical malpractice and deliberate
        indifference claims.

2.     The portion of Plaintiff's Motion concerning Dr. Randall Wilcox is **GRANTED**
        **in part** and **DENIED in part**.  Dr. Wilcox is **prohibited** only from offering
        standard of care opinions, including whether Defendant Waldron should have
        called a physician or sent Mr. Rewis to the emergency room.  However, Dr.
        Wilcox may otherwise testify as an expert, including on what a physician or

medical supervisor likely would have directed Defendant Waldron to do if Waldron had contacted such an individual, causation, and whether, based on his review of the evidence, Mr. Rewis was experiencing an adverse medical event or in need of medical care, consistent with the Federal Rules of Evidence and other applicable law.  This testimony is relevant to Plaintiff's medical malpractice and deliberate indifference claims.

3.      The portion of Plaintiff's Motion concerning Dr. Richard Kleiman is **GRANTED in part**.  Dr. Kleiman is **prohibited** from testifying at trial that Mr. Rewis may have passed away irrespective of what time he arrived at the emergency room.  However, Dr. Kleiman is **permitted** to testify it is impossible to prove (or determine) that, more likely than not, Mr. Rewis would have survived with earlier treatment.

## BACKGROUND

This case arises out of the death of Shannon Rewis while he was in custody at the Coffee County Jail following his arrest on October 20, 2017.  Doc. 1.  Plaintiff brings a claim for medical malpractice and a claim under 42 U.S.C. § 1983 for deliberate indifference to a serious medical need.  Id.  Specifically, Plaintiff contends Defendant Waldron and other prison officials violated the standard of care and caused Mr. Rewis' death by leaving him in an observation cell upon learning Mr. Rewis either ingested or "did" two grams of methamphetamine, rather than providing him treatment or sending him elsewhere to receive emergency medical treatment.

Defendants have identified three experts—Dr. Robert Hall, Dr. Randall Wilcox, and Dr. Richard Kleiman—to testify on either the standard of care, causation, or both—as those topics relate to Plaintiff's medical malpractice claim and § 1983 deliberate indifference to a serious medical need claim.  Plaintiff challenges these experts' ability to offer their opinions under Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), and Rule 702.  Docs. 96, 136.

## LEGAL STANDARD

The United States Supreme Court's holding in Daubert v. Merrell Dow Pharmaceutical, Inc., 509 U.S. 579 (1993), and the text of Rule 702 require trial judges to serve as gatekeepers in

determining the admissibility of expert testimony; however, any decision regarding admissibility is not a position on the strength or weight of the testimony.  Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141 (1999).  Courts routinely look to three elements to determine if an expert is qualified under Daubert and Rule 702.  As the Eleventh Circuit Court of Appeals has stated, the elements for consideration are whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (citations omitted).  "[A]lthough there is some overlap among the inquiries into an expert's qualifications, the reliability of his proffered opinion and the helpfulness of that opinion, these are distinct concepts that courts and litigants must take care not to conflate."  Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003).  A trial court has broad latitude in evaluating each of these three factors.

As to qualifications, an expert may be qualified "by knowledge, skill, experience, training, or education."  Hendrix ex rel. G.P. v. Evenflo Co., Inc., 609 F.3d 1183, 1193 (11th Cir. 2010).  The expert need not have experience precisely mirroring the case at bar in order to be qualified.  Maiz v. Virani, 253 F.3d 641, 665 (11th Cir. 2001).  However, where an expert does have experience directly applicable to an issue at bar, experience alone may provide a sufficient foundation for expert testimony.  Frazier, 387 F.3d at 1261.

As to reliability, courts look, when possible, to: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the

technique is generally accepted in the scientific community.  <u>Daubert</u>, 509 U.S. at 593–94.

These factors are not exhaustive, and "a federal court should consider any additional factors that

may advance its Rule 702 analysis."  <u>Quiet Tech.</u>, 326 F.3d at 1341.  At all times in this flexible

inquiry, a court's focus must be "solely on principles and methodology, not on the conclusions

that they generate."  <u>Seamon v. Remington Arms Co., LLC</u>, 813 F.3d 983, 988 (11th Cir. 2016)

(citation omitted).

Finally, as to the third <u>Daubert</u> factor, expert testimony is likely to assist the trier of fact

to the extent "it concerns matters beyond the understanding of the average lay person and

logically advances a material aspect of the proponent's case."  <u>Kennedy v. Elec. Ins. Co.</u>, Case

No. 4:18-cv-148, 2019 WL 2090776, at *5 (S.D. Ga. May 13, 2019) (citing <u>Daubert</u>, 509 U.S. at

591); <u>Frazier</u>, 387 F.3d at 1262–63.  Rule 702 permits experts to make conclusions based on

competing versions of the facts, but those conclusions must still assist the trier of fact by

explaining something that is "beyond the understanding of the average lay person."  <u>Jackson v.

Catanzariti</u>, No. 6:12-CV-113, 2019 WL 2098991, at *10 (S.D. Ga. May 14, 2019) (citing

<u>Frazier</u>, 387 F.3d at 1262).  Expert testimony generally will not help the trier of fact "when it

offers nothing more than what lawyers for the parties can argue in closing arguments."  <u>Id.</u>

(quoting <u>Cook v. Sheriff of Monroe Cnty.</u>, 402 F.3d 1092, 1111 (11th Cir. 2005)).  Such

testimony "is properly excluded when it is not needed to clarify facts and issues of common

understanding which jurors are able to comprehend for themselves."  <u>Hibiscus Assocs. Ltd. v.

Bd. of Trs. of Policemen & Firemen Ret. Sys.</u>, 50 F.3d 908, 917 (11th Cir. 1995) (citations

omitted).

"The burden of laying the proper foundation for the admission of the expert testimony is

on the party offering the expert, and admissibility must be shown by a preponderance of the

evidence." <u>Allison v. McGhan Med. Corp.</u>, 184 F.3d 1300, 1306 (11th Cir. 1999); <u>McCorvey v.</u>

<u>Baxter Healthcare Corp.</u>, 298 F.3d 1253, 1257 (11th Cir. 2002).  However, "it is not the role of

the district court to make ultimate conclusions as to the persuasiveness of proffered evidence."

<u>Quiet Tech.</u>, 326 F.3d at 1341.  Instead, "[v]igorous cross-examination, presentation of contrary

evidence, and careful instruction on the burden of proof are the traditional and appropriate means

of attacking shaky but admissible evidence."  <u>Daubert</u>, 509 U.S. at 596.

## DISCUSSION

### I.   Dr. Hall

Dr. Hall is an internist, who has been practicing in Griffin, Georgia, for over 20 years.

Doc. 77-2 at 1.  Additionally, Dr. Hall is the founder, owner, and medical director for Inmate

Physician Services, Inc., which is an entity that provides correctional medicine at the Spalding

County Jail.[1]  <u>Id.</u>

#### A.   Assistance to Trier of Fact

Dr. Hall opines that if Defendant Waldron, the attending nurse, had called a physician, it

would have been reasonable for the physician to instruct her to place the patient in an

observation unit, which is what Defendant Waldron did in this case.[2]  Doc. 96 at 3–4, 17.

Plaintiff challenges this opinion as unhelpful and not relevant.[3]  <u>Id.</u> at 17–18; Doc. 136 at 11–12;

---

[1]     Plaintiff does not challenge Dr. Hall's qualifications, and the Court takes no stance as to whether Dr. Hall is qualified.  This information is simply provided as background.

[2]     Plaintiff does not challenge Dr. Hall's ability to provide opinion testimony regarding policies and procedures or Defendant Waldron's training and does not challenge Dr. Hall's ability to testify about whether Defendant Waldron adhered to the standard of care.  Doc. 96 at 3 n.2.

[3]     Plaintiff also suggests, in passing, the assumptions on which Dr. Hall relies are "too speculative to be reliable."  Doc. 96 at 17.  While Plaintiff mentions reliability, Plaintiff does not assert any discernible reliability challenge, as this is the sum total of her argument.  To the extent Plaintiff intended to bring a reliability challenge, such a challenge would fail due to Plaintiff's superficial treatment of the issue of reliability.

Doc. 157 at 2–4. Specifically, Plaintiff argues what a physician would have instructed Defendant Waldron to do if she had called one is not an issue in this case. Plaintiff also argues none of Dr. Hall's testimony is relevant to the pending deliberate indifference claim against Defendant Waldron. Doc. 157 at 2–4.

Defendants argue the disputed portion of Dr. Hall's testimony is relevant to: Plaintiff's medical malpractice claim against Defendant Waldron; to rebut Plaintiff's expert (Nurse Lori Roscoe); and to address Plaintiff's deliberate indifference claim. Doc. 115 at 10–11; Doc. 153 at 3–4; Doc. 154 at 2–4. Plaintiff fails to respond directly to Defendants' arguments explaining why Dr. Hall's disputed testimony is relevant and helpful as to the medical malpractice claim against Defendant Waldron or to rebut Plaintiff's expert. Doc. 136 at 11–12. Plaintiff, however, does dispute Defendants' argument as to relevance and helpfulness of Dr. Hall's opinion to the pending deliberate indifference claim. Doc. 157 at 2–4.

Under Rule 702, expert opinions must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This means a court must determine whether the testimony will assist the trier of fact. Daubert, 509 U.S. at 591. Expert testimony assists the trier of fact by explaining something that is "beyond the understanding of the average lay person." Jackson, 2019 WL 2098991, at *10 (citing Frazier, 387 F.3d at 1262). Expert testimony must be sufficiently tied to the facts of the case. Id. ("Rule 702's helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."). Expert testimony does not help the trier of fact if it fails to "fit" with the facts of the case. McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004); see also FP Augusta II, LLC v. Core Constr. Servs., LLC, No. CV 119-048, 2022 WL 626783, at *4 (S.D. Ga. Mar. 3, 2022) (quoting Korsing v. United States, No. 16-22190-CIV, 2017 WL 7794276, at *3 (S.D. Fla.

Aug. 24, 2011)) ("Under [the helpfulness] requirement, which is concerned primarily with relevance, the Court must consider whether the expert testimony 'is sufficiently tied to the facts of the case that it will aid the [factfinder] in resolving a factual dispute.'").

Under Daubert, the proponent of the expert (in this case, Defendants) bears the burden of demonstrating an expert's opinion "is relevant to the task at hand . . . i.e., that it logically advances a material aspect of the proposing party's case." Allison, 184 F.3d at 1312 (citation omitted). Here, Defendants have carried their burden to show the evidence is relevant and helpful. The testimony is plainly relevant to Plaintiff's medical malpractice claim.

To prevail on a medical malpractice claim under Georgia law, Plaintiff must show a causal connection "between the conduct and the resulting injury[.]" City of Douglasville v. Queen, 514 S.E.2d 195, 197 (Ga. 1999); see Wilson v. City of Douglasville, No. 1:17-cv-00634, 2019 U.S. Dist. LEXIS 242547, at *14 (N.D. Ga. Sept. 26, 2019) (quoting Mann v. Taser Int'l., Inc., 588 F.3d 1291, 1304 (11th Cir. 2009)) ("Georgia law is well-settled that the defendant's conduct is not a cause of the event if the event would have occurred without it.") (cleaned up). For Plaintiff to prevail, she must show Defendant Waldron breached the standard of care and the breach caused Mr. Rewis' death. Plaintiff's expert intends to testify Defendant Waldron did not act within the standard of care when she failed to contact the on-call physician. Doc. 70-2 at 6–8. Defendants contend Dr. Hall's testimony will show that, even assuming Defendant Waldron should have called the on-call physician, Plaintiff cannot succeed on her claim because that failure did not cause Mr. Rewis' death, as the on-call physician would not have instructed Waldron to do anything different from what she actually did. Thus, Dr. Hall's testimony on what an on-call physician would have instructed Defendant Waldron to do is relevant and helpful. Specifically, this testimony will help the jury decide whether Defendant Waldron's

failure to meet the standard of care caused Mr. Rewis' death as it relates to Plaintiff's medical malpractice claim.  Because Dr. Hall's testimony is relevant to the pending medical malpractice claim, he may testify consistent with the Federal Rules of Evidence and other applicable law.

Dr. Hall's testimony is also relevant to Plaintiff's deliberate indifference to a serious medical need claim.  To prove a deliberate indifference to medical treatment claim, a plaintiff must demonstrate: (1) a serious medical need; (2) deliberate indifference to the need; and (3) a causal connection between the constitutional violation and plaintiff's injury.  Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016), *abrogated on other grounds, as recognized by* Campoverde-Panora v. U.S. Att'y Gen., No. 21-10131, 2021 WL 5414940, at *2 (11th Cir. Nov. 19, 2021).  The first element is an objective inquiry.  Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007).  A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Id. (quotation and citation omitted).  The second element is a subjective inquiry.  Id.  To show a defendant's deliberate indifference, a plaintiff must prove: "(1) subjective knowledge of a risk of serious harm; (2) a disregard of that risk; (3) by conduct that is more than mere negligence."  Melton, 841 F.3d at 1223.  Conduct that is more than mere negligence can include grossly inadequate care, a decision to take a less effective but easier course of treatment, or completely cursory medical care that amounts to no treatment at all.  Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. 2011).

Dr. Hall intends to testify that, if Defendant Waldron had called a physician, it would have been reasonable for the physician to instruct her to place the patient in an observation unit. Defendants argue the challenged opinion goes to the second element of the deliberate indifference claim—whether Defendant Waldron disregarded the risk of serious harm by conduct

that is more than negligent.  Doc. 153 at 3.  The testimony will aid the jury in analyzing the

efficacy of Defendant Waldron's decision not to call a physician and instead place Mr. Rewis in

a unit for observation.  The testimony could tend to show Waldron's conduct was not "more than

mere negligence," Waldron did not appreciate the risk of serious harm, or Waldron did not

disregard that risk—all of which are elements Plaintiff must prove.  Though Plaintiff argues this

testimony is not relevant because swallowing methamphetamine is a serious medical condition,

doc. 157 at 3, Plaintiff is still required to prove this fact at trial.[4]  Thus, Dr. Hall's testimony will

also assist the trier of fact in resolving Plaintiff's deliberate indifference claim and is relevant to

this claim.

Finally, the portion of Dr. Hall's testimony that is based on a hypothetical need not be

excluded merely because it is based on a hypothetical.  "The Rules allow experts to answer

hypothetical questions, so long as the facts the expert assumes are clear," and the assumptions

are not so far afield as to be irrelevant.  Hudgens v. Durrence, No. CV 207-110, 2008 WL

6839019, at *5 (S.D. Ga. Dec. 30, 2008) (citations omitted).  The ability to answer hypotheticals

is one of the primary differences between lay witness testimony and expert testimony.  See

United States v. Henderson, 409 F.3d 1293, 1300 (11th Cir. 2005) (relying on the proposition

"the ability to answer hypothetical questions is '[t]he essential difference' between expert and

lay witnesses" in deciding, *arguendo*, it was erroneous for a district court to admit lay witness

testimony regarding a hypothesis) (citation omitted).  The hypothetical scenario Dr. Hall

considered and offered an opinion on (i.e., what would have happened if Defendant Waldron had

---

[4]       Any concessions Defendants made for purposes of summary judgment do not prevent Defendants
from contesting the issue at trial.  Freeman v. Perdue Foods, LLC, No. 5:09-cv-395, 2013 WL 4049059,
at *3 (M.D. Ga. Aug. 9, 2013) (citing Gen. Acc. Fire & Life Assur. Corp., Ltd. v. Akzona, Inc., 622 F.2d
90, 92 n.1 (4th Cir. 1980); E.C. Ernst, Inc. v. General Motors Corp., 537 F.2d 105, 108 (5th Cir. 1976)).
Thus, whether testimony is relevant to dispose of the summary judgment proceedings is not determinative
of whether the testimony is relevant at trial.

called a physician) is closely tied to the facts and issues in this case.  And the assumptions Dr. Hall makes are clear.  Thus, Dr. Hall's testimony about what a doctor would have directed Defendant Waldron to do, or not do, will not be excluded.  <u>Jackson</u>, 2019 WL 2098991, at *1 (allowing an expert to answer hypothetical questions).

Accordingly, the portion of Plaintiff's Motion seeking to exclude Dr. Hall's testimony is **DENIED**.  Dr. Hall is permitted to testify, including on what a physician or medical supervisor likely would have directed Defendant Waldron to do, consistent with the Federal Rules of Evidence and other applicable law.

**II.      Dr. Wilcox**

Dr. Wilcox has been practicing medicine since 1996 and has been a board-certified physician in urgent care medicine since 2006.  Doc. 96-7 at 2.  In 1996, Dr. Wilcox formed Wellcon, Inc., which is an entity that assists agencies across the country with providing healthcare to incarcerated individuals.  Dr. Wilcox has been the Medical Director of Salt Lake County Jail System since 1996, where he previously worked as a staff physician.  <u>Id.</u>  Dr. Wilcox also has experience as an attending physician for the Utah Department of Corrections and served as Medical Director for the Maricopa County Jail System.  Additionally, Dr. Wilcox serves as an adjunct professor of medicine at the University of Utah and an associate professor of chemistry at Salt Lake Community College.  <u>Id.</u>

Dr. Wilcox essentially provides opinions on four topics: (1) whether Coffee County Jail's policies and procedures in place at the time were reasonable and appropriate, especially regarding inmates suspected of being under the influence of drugs or alcohol; (2) whether Defendant Waldron acted appropriately in her response to Mr. Rewis; (3) what a physician or supervisor likely would have done if Defendant Waldron had called one; and (4) whether Mr.

Rewis was in need of emergency medical care based on the information known to Defendant Waldron. Id. at 2–3. The parties characterize these as standard of care opinions or causation opinions, though there is some dispute as to which opinions fall into the two categories. Plaintiff challenges Dr. Wilcox's opinions under Daubert. Doc. 96 at 18–19. These challenges are addressed in turn.

A.     Challenge to Standard of Care Opinion

Plaintiff challenges two portions of Dr. Wilcox's report that she argues contain standard of care opinions. First, Plaintiff argues Dr. Wilcox cannot opine on whether Defendant Waldron had a "sufficient basis for contacting a supervision physician or to otherwise send Mr. Rewis to the emergency room" and whether Dr. Wilcox would have expected Defendant Waldron to call a supervisor or medical director in these circumstances. Id. at 18 (citing Doc. 96-7). Second, Plaintiff challenges Dr. Wilcox's ability to opine that, "based on [Defendant] Waldron's documentation and deposition testimony, it did not appear that Mr. Rewis was in need of emergency care at the time of her attempted intake or that he otherwise was at risk for an adverse medical event." Id. Plaintiff contends these opinions are standard of care opinions and Dr. Wilcox, by his own admission, is not qualified to offer standard of care opinions about nurses.

Defendants respond these opinions are not truly standard of care opinions or whether Defendant Waldron met the standard of care, but are instead opinions related to causation and Dr. Wilcox should be permitted to testify there was no basis for Defendant Waldron to call a physician or send Mr. Rewis to the emergency room. Doc. 115 at 14.

**1.     *Opinion 1: Whether Defendant Waldron should have called a physician and whether Dr. Wilcox would have expected Defendant Waldron to call a supervisor or medical director in these circumstances.***

Plaintiff challenges Dr. Wilcox's ability to opine on Defendant Waldron's treatment choices—specifically, whether she should have called a physician or sent Mr. Rewis to the

emergency room.  Defendants argue Plaintiff's challenge to whether Dr. Wilcox is qualified to

opine on standard of care opinions is meritless because this is a causation opinion, not a standard

of care opinion.

Defendants' characterization of Dr. Wilcox opinion on whether Defendant Waldron

should have called a physician (or whether Dr. Wilcox would have expected Waldron to make

the call) is not persuasive.  Black's Law Dictionary defines the standard of care as: the degree of

care that a reasonable person should exercise.  Standard of Care, Black's Law Dictionary, (11th

ed. 2019).  Dr. Wilcox's opinion is that Defendant Waldron, a nurse, did not need to do more

based on the situation she was presented with—such as call a physician or send Mr. Rewis to an

emergency room.  Doc. 96-7.  Put differently, it is Dr. Wilcox's opinion Defendant Waldron

exercised a reasonable amount of care when performing her duties as a nurse by not calling a

supervisor or sending Mr. Rewis to the emergency room.  This portion of Dr. Wilcox's opinion

is unrelated to causation.  This opinion does not address what caused, or did not cause, Mr.

Rewis' death.  Instead, it concerns the appropriateness of Defendant Waldron's actions, making

it a standard of care opinion.

To provide this standard of care opinion, Dr. Wilcox must be qualified to provide a

standard of care on nurses.  Plaintiff argues Dr. Wilcox, as a physician, is not qualified to offer

expert opinions on the standard of care applicable to nurses.  Plaintiff points to Dr. Wilcox's

deposition testimony, where he states he is not offering standard of care opinions and he is not

qualified to render such opinions.  Doc. 96-5 at 10.  Where an expert "by his own admission [is]

unqualified to testify" on an issue, he should be excluded on that topic.  Day, LLC v. Plantation

Pipe Line Co., 315 F. Supp. 3d 1219, 1228 (N.D. Ala. 2018).  Further, Defendants make no

argument Dr. Wilcox is qualified to offer an opinion on the standard of care applicable to nurses,

instead arguing Dr. Wilcox's testimony is not being offered to show whether Defendant Waldron met the standard of care. Doc. 115 at 14. As explained above, this argument is unconvincing. The opinion concerns the standard of care and whether Defendant Waldron met that standard. Thus, Defendants fail to meet their burden in showing Dr. Wilcox is qualified to offer such an opinion.

Accordingly, this portion of Plaintiff's Motion is **GRANTED**. Dr. Wilcox is prohibited from offering an opinion on whether Defendant Waldron had a "sufficient basis for contacting a supervision physician or to otherwise send Mr. Rewis to the emergency room," whether she should have contacted a physician or supervisor about Mr. Rewis, or whether Dr. Wilcox would have expected Defendant Waldron to make that call.

### 2. *Opinion 2: Whether Mr. Rewis needed medical care.*

Plaintiff challenges Dr. Wilcox's ability to opine that, "based on [Defendant] Waldron's documentation and deposition testimony, it did not appear that Mr. Rewis was in need of emergency care at the time of her attempted intake or that he otherwise was at risk for an adverse medical event." Doc. 96 at 18. Plaintiff argues this is also a standard of care opinion and should be excluded for the same reasons. Id.

Dr. Wilcox's opinion on whether Mr. Rewis needed emergency care is not an opinion on the standard of care. This opinion does not discuss what Defendant Waldron should or should not have done. Instead, the opinion addresses Mr. Rewis' condition based on the information known to Defendant Waldron at the time. Unlike Dr. Wilcox's opinion about whether a physician should have been contacted, the opinion makes no assessment of what Defendant Waldron should have done. Because Dr. Wilcox's opinion on whether Mr. Rewis needed

emergency care or was at risk for an adverse medical event is not a standard of care opinion, Plaintiff's argument that Dr. Wilcox is not qualified to offer this opinion is meritless.

Plaintiff also suggests the opinions of Dr. Wilcox must be excluded because his opinion ignores evidence Mr. Rewis told Defendant Waldron he "swallowed" as opposed to "did" or "used" methamphetamine.[5]  Doc. 96 at 20 n.13; Doc. 157 at 3.  The information experts rely on generally goes to weight not admissibility.  Vincent v. Am. Honda Motor Co., No. CV 108-067, 2010 WL 11537726 (S.D. Ga. July 1, 2010) (citing Bazemore v. Friday, 478 U.S. 385, 400 (1986)).  "[T]he identification of flawed data or facts relied upon by an expert is precisely the role of cross-examination."  McGarity v. FM Carriers Inc., No. CV410-130, 2012 WL 1028593, at *7 (S.D. Ga. Mar. 26, 2012) (citing Daubert, 509 U.S. at 596; Quiet Tech., 326 F.3d at 1345–46).  Further, when courts consider the facts supporting an expert's opinion in a Daubert challenge, they do so in the context of a reliability challenge, not a helpfulness challenge.  Plaintiff has not asserted a reliability challenge, and even if she had, it would fail because the assumption Mr. Rewis did or used, rather than swallowed methamphetamine, is not based on assumptions so far afield as to render the opinion unreliable.  See Tillman v. C.R. Bard, Inc., 96 F. Supp. 3d 1307, 1320 n.14 (M.D. Fla. 2015) (declining to exclude expert opinion based on assumption for which expert offered some support).  Indeed, Plaintiff recognizes throughout her briefing it is a disputed fact, supported by conflicting evidence, whether Mr. Rewis told Defendant Waldron he had swallowed, consumed, or did methamphetamine.  Plaintiff is free to challenge the facts relied upon by Dr. Wilcox through cross-examination, but reliance on such assumptions does not render expert testimony inadmissible under Daubert.  McGarity, 2012 WL 1028593, at *8.

---

[5]    To the extent Plaintiff also raises this argument as to Dr. Hall, it fails for the same reasons described herein.

Accordingly, this portion of Plaintiff's Motion is **DENIED**.  Dr. Wilcox may opine that, based on Defendant Waldron's documentation and deposition testimony, it did not appear Mr. Rewis needed emergency care at the time of her attempted intake or he otherwise was at risk for an adverse medical event.

### B.      Causation Opinion

Plaintiff also challenges Dr. Wilcox's ability to opine that, if Defendant Waldron had called a supervisor, it would have been reasonable for the supervisor or medical director to instruct the nurse to go back to the patient later in her shift.  Doc. 96 at 19; Doc. 115 at 136 at 12–13.  Plaintiff argues this opinion is not helpful and fails to assist the trier of fact.  Doc. 96 at 19.  Plaintiff acknowledges this argument is the same as her challenge to Dr. Hall's opinion.  Id. For the reasons explained above when addressing Dr. Hall's opinions, Plaintiff's challenge to this portion of Dr. Wilcox's opinion fails.  See supra § I.A.  Accordingly, the Court **DENIES** this portion of Plaintiff's Motion.  Dr. Wilcox's testimony about what a supervisor or medical director would have directed Defendant Waldron to do is not excluded.

### C.      Cumulative Testimony

Plaintiff argues Dr. Wilcox's testimony should be excluded under Rule 403 because his opinions are cumulative of the testimony offered by Dr. Hall.  Doc. 96 at 20; Doc. 136 at 14. Federal Rule of Evidence 403 permits a court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  The court has broad discretion in controlling the evidence presented at trial, including the decision whether to exclude cumulative evidence.  Tran v. Toyota Motor Corp., 420 F.3d 1310, 1315 (11th Cir. 2005).

While acknowledging certain similarities in the expert reports, Defendants contend the testimony is not so cumulative it should be excluded under Rule 403.  Doc. 115 at 13.  The Court agrees.  Dr. Wilcox's testimony should not be excluded as cumulative at this point.  First, there are differences in Dr. Hall and Dr. Wilcox's qualifications and experience.  Both physicians have provided medical care at jails.  Docs. 96-6, 96-7.  However, Dr. Hall's experience is almost exclusively in Griffin, Georgia, at the Spalding County Jail.  Doc. 96-6 at 1.  On the other hand, Dr. Wilcox has worked at jails and prisons, in larger metropolitan areas such as Salt Lake City, Utah, and Maricopa County, Arizona.  Doc. 96-7 at 1.  Additionally, the materials they reviewed to form their opinions are not identical.  Compare id. at 1 with Doc. 96-6 at 1.  Finally, the opinions they intend to offer, while similar, are not identical.  As explained above, Dr. Wilcox is not able to opine on the standard of care for nurses, whereas Dr. Hall will be able to offer an opinion on that topic.  Additionally, Dr. Hall offers an opinion related to the training Defendant Waldron received, while Dr. Wilcox does not.

Moreover, though Rule 403 allows the Court to exclude cumulative evidence, such rulings are best made at trial, "so that the Court can ascertain whether the evidence is cumulative of other admissible evidence in the proper context."  Safranek v. Wal-Mart Stores, Inc., No. 07-61533-CIV, 2010 WL 11505264, at *2 (S.D. Fla. July 15, 2010).  Prior to trial, whether an expert's testimony may be cumulative is largely speculative.  Id. (citing Parker v. Moran Towing Corp., No. 01-cv-1011, 2003 WL 25781420 (M.D. Fla. Jan. 14, 2003)); Kirksey v. Schindler Elevator Corp., No. CV 15-0115, 2016 WL 5213928, at *18 (S.D. Ala. Sept. 21, 2016).

At this point, the Court will not exclude Dr. Wilcox's testimony as cumulative.  The opinions Dr. Hall and Dr. Wilcox seek to offer are not identical, and there are differences in their perspective and experiences.  See, e.g., Abbott Point of Care, Inc. v. Epocal, Inc., 868 F. Supp.

2d 1310, 1331 (N.D. Ala. 2012); <u>Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.</u>, No. 10-21511-CIV, 2010 WL 4225947, at *2 (S.D. Fla. Oct. 21, 2010) (citations omitted) ("Testimony on the same topic by different experts, however, is not needlessly cumulative where the experts will testify from different professional perspectives."); <u>Bodner v. Royal Caribbean Cruises, Ltd.</u>, No. 17-20260, 2018 WL 2471215 at *5 (S.D. Fla. Apr. 10, 2018) ("[T]he fact that [the experts'] testimony and opinions may overlap to some extent does not demonstrate a sufficient basis of . . . needless presentation of cumulative evidence under [Rule] 403 to bar the testimony of either witness.") (citation omitted).  Similarly, a determination as to whether the probative value of any testimony is substantially outweighed by being needlessly cumulative testimony is best made in the context of trial. <u>Kirksey</u>, 2016 WL 5213928, at *18; <u>Mann v. Taser Int'l, Inc.</u>, No. 4:-5-cv-0273, 2008 WL 11423979, at *4 (N.D. Ga. Feb. 4, 2008); <u>Mighty v. Miami-Dade County</u>, No. 14-23285-CIV, 2019 WL 4306942, at *7 (S.D. Fla. Aug. 9, 2019), *report and recommendation adopted*, 2019 WL 4305847 (S.D. Fla. Sept. 10, 2019).

Accordingly, the Court **DENIES** this portion of Plaintiff's Motion and will not exclude Dr. Wilcox's testimony as needlessly cumulative.  Plaintiff may re-raise her objections to the cumulative nature of Dr. Hall and Dr. Wilcox's testimony during the trial, if she believes it is appropriate to do so. <u>Royal Bahamian</u>, 2010 WL 4225947, at *2 (citing <u>Walker v. Werner Enter., Inc.</u>, No. 8:07-cv-631, 2008 WL 2816248, at *4 (M.D. Fla. May 14, 2008)).

## III.   Dr. Kleiman

Plaintiff argues Dr. Kleiman, an emergency room physician and medical toxicologist, should not be permitted to offer his expert opinions in this case. Doc. 96 at 21–23; Doc. 136 at 1–11; Doc. 157 at 4–5.  Plaintiff contends Dr. Kleiman's opinions—that Mr. Rewis may or may not have survived if he had been transported to the hospital earlier and that it is impossible to

determine the likelihood Mr. Rewis would have survived with earlier transportation—are the type of equivocating opinions which do not assist the trier of fact.[6]  Thus, his opinion must be excluded.  Doc. 96 at 21–22; Doc. 136 at 1–11.

Defendants argue Dr. Kleiman's testimony—that it is impossible to determine whether more rapid treatment at a hospital would have saved Mr. Rewis' life—would undermine Plaintiff's proof of causation element of Plaintiff's § 1983 deliberate indifference claims. Doc. 153 at 3, 5–6; Doc. 154 at 2.  Defendants contend Dr. Kleiman's testimony is relevant to show why Plaintiff's causation theory is speculative and the shortcomings in Plaintiff's case on the element of causation.  Doc. 153 at 5–7.  Specifically, Defendants explain Dr. Kleiman's testimony shows Mr. Rewis' death "was unavoidable even with earlier medical treatment."[7]  Id. at 7.

### A.      Legal Standard

Under Rule 702, expert opinions must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.  Expert testimony assists the trier of fact by explaining something that is "beyond the understanding of the average lay person.'" Jackson,

---

[6]     Plaintiff also argues Dr. Kleiman's opinions are unreliable because they do not assist the trier of fact.  Doc. 136 at 2, 4, 6–7, 10.  However, assistance to the trier of fact (or helpfulness) and reliability are separate inquiries under Daubert.  Plaintiff's mere invocation of the term "unreliable" is insufficient to challenge to the reliability of Dr. Kleiman's opinions.  Similarly, Plaintiff briefly mentions the need to avoid the presentation of speculative evidence, but it is not clear whether this is intended to be a reliability challenge, as this is the sum total of Plaintiff's argument.  Doc. 96 at 24.  This vague reference to speculative evidence does not present any specific discernible challenge, under the reliability prong or otherwise.  Moreover, to the extent Plaintiff intended to assert a reliability challenge in her Motion, such a challenge would fail on Plaintiff's superficial treatment of the issue.

[7]     Defendants originally argued Dr. Kleiman's testimony assists the trier of fact because it rebuts Dr. Sperry's opinion.  Doc. 115 at 3–9.  Dr. Sperry intended to testify Defendants' failure to provide Mr. Rewis with early treatment for methamphetamine toxicity caused Mr. Rewis' death.  Defendants argue Dr. Kleiman's testimony contradicts Dr. Sperry's testimony.  Id. at 5, 7–8.  However, the Court has excluded Dr. Sperry from testifying at trial on causation.  Docs. 147, 150.  As a result, Defendants' argument Dr. Kleiman's testimony is helpful as rebuttal testimony is moot, and the argument requires no further consideration.

2019 WL 2098991, at *10 (citing <u>Frazier</u>, 387 F.3d at 1262).  "[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments."  <u>Frazier</u>, 387 F.3d at 1262.

**B.    Dr. Kleiman's Survivability Opinion Is Excluded**

Plaintiff challenges Dr. Kleiman's opinion that "Mr. Rewis may have passed away irrespective of what time he arrived at the emergency room following his encounter with Nurse Waldron."  <u>Id.</u> at 3.  Dr. Kleiman explains death was a possibility regardless of the time of arrival because of a variety of unknowns, including how much methamphetamine was in Mr. Rewis' system and the rate at which it was entering his system, what information Mr. Rewis would have provided medical professionals and what treatment to which he would have consented, what the success of any of those treatments would be.  <u>Id.</u>  This opinion is a survivability opinion— whether Mr. Rewis would have survived with treatment.

The Court agrees Plaintiff is required to prove Defendants caused Plaintiff's death.  But, here, Dr. Kleiman's survivability testimony does not assist the trier of fact in making that determination.  The crux of Dr. Kleiman's survivability testimony is Mr. Rewis may or may not have survived with earlier treatment because a variety of variables influence that outcome.  While Defendants characterize Dr. Kleiman's opinion as being that Mr. Rewis' death was unavoidable, doc. 153 at 7, this is not accurate.  Instead, Dr. Kleiman opines Mr. Rewis "*may* have passed away irrespective of what time he arrived at the emergency room."  Doc. 96-8 at 3 (emphasis added).

Dr. Kleiman's equivocal testimony, Mr. Rewis may (or may not) have survived with earlier medial intervention, does not assist the trier of fact with determining causation.  <u>See, e.g.</u>, <u>Bowers v. Norfolk S. Corp.</u>, 537 F. Supp. 2d 1343, 1368 (M.D. Ga. 2007) ("Dr. Baker's

equivocal testimony on causation—that Plaintiff may have injured his back while sitting on a locomotive seat—does not assist the trier of fact to determine proximate cause.").  While testimony on the probability of an event assists the trier of fact, Dr. Kleiman's "may or may not" opinion does not qualify as a description of probability.  Frazier, 387 F.3d at 1263 (excluding expert testimony as unhelpful because an imprecise and unspecific opinion does not help the jury determine what likely would have happened); Bowers, 537 F. Supp. 2d at 1368 ("'May' is not synonymous with 'probable.'  'May' connotes something merely possible, not probable. 'Probable' means 'likely.'  [The expert's] use of the qualifier 'may,' therefore, does not 'logically advance a material aspect of [Plaintiff's] case.'") (some alterations in original).  Dr. Kleiman's testimony does not explain the medical importance of anything that occurred in the time leading up to Mr. Rewis' death and, therefore, it does not assist the trier of fact.  Clarke v. Schofield, 632 F. Supp. 2d 1350, 1368 (M.D. Ga. 2009); see also McDowell v. Brown, 392 F.3d 1283, 1299 (11th Cir. 2004) (excluding an expert from testifying that earlier treatment is better because the testimony is too vague to provide the jury with any insight into causation).

Accordingly, the Court finds Dr. Kleiman's equivocal testimony Mr. Rewis may have died even if brought to the hospital earlier does not assist the jury in determining whether Plaintiff has met her burden in proving causation.  Lowery v. Sanofi-Aventis LLC, No. 7:18-CV-00376, 2021 WL 872620, at *22 (N.D. Ala. Mar. 9, 2021).  Thus, the Court **GRANTS** this portion of Plaintiff's Motion.  Dr. Kleiman is prohibited from offering this testimony at trial.

### C.      The Determination Opinion Is Helpful and Assists the Trier of Fact

Dr. Kleiman also opines "it is impossible to determine that, more likely than not, Mr. Rewis would have survived with earlier treatment at the E.R. on the night of October 20th."  Id. This second opinion—the determination opinion—is not a survivability opinion, but rather an

opinion on whether survivability can be determined or proven with any degree of certainty.  This determination opinion is about whether Plaintiff is able to prove her case and specifically, whether she can prove Mr. Rewis would have survived with earlier intervention.

Dr. Kleiman's determination opinion—whether Plaintiff can prove Mr. Rewis would have survived with earlier intervention—should not be excluded.  First, this opinion is directly relevant issues in this case.  The determination opinion goes to causation for both the medical malpractice claim and the deliberate indifference claim.  Plaintiff intends to show, if Defendant Waldron had provided earlier treatment, Mr. Rewis would have survived the methamphetamine overdose.  Dr. Kleiman's opinion Plaintiff cannot show that—whether as an element of the claim or to prove damages—is helpful to the jury.  This testimony directly undercuts something Plaintiff is required to prove at trial, so it is relevant and helpful.  And it is not an equivocating opinion.  Unlike the survivability opinion, Dr Kleiman's testimony is that Plaintiff *cannot* prove something.  Accordingly, Dr. Kleiman's opinion that "it is impossible to determine that, more likely than not, Mr. Rewis would have survived with earlier treatment at the E.R. on the night of October 20th" will not be excluded.  This portion of Plaintiff's Motion is **DENIED**.

## CONCLUSION

For the reasons explained above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion.  A summary of the Court's rulings is as follows:

1. The portion of Plaintiff's Motion concerning Dr. Robert Hall is **DENIED**.  Dr. Hall is permitted to testify on what a physician or medical supervisor likely would have directed Defendant Waldron to do if Waldron had contacted such an individual, consistent with the Federal Rules of Evidence and other applicable law.  This testimony is relevant to Plaintiff's medical malpractice and deliberate indifference claims.

2. The portion of Plaintiff's Motion concerning Dr. Randall Wilcox is **GRANTED in part** and **DENIED in part**.  Dr. Wilcox is **prohibited only** from offering standard of care opinions, including whether Defendant Waldron should have called a physician or sent Mr. Rewis to the emergency room.  However, Dr.

Wilcox may otherwise testify as an expert, including on what a physician or medical supervisor likely would have directed Defendant Waldron to do if Waldron had contacted such an individual, causation, and whether, based on his review of the evidence, Mr. Rewis was experiencing an adverse medical event or in need of medical care, consistent with the Federal Rules of Evidence and other applicable law.  This testimony is relevant to Plaintiff's medical malpractice and deliberate indifference claims.

3.      The portion of Plaintiff's Motion concerning Dr. Richard Kleiman is **GRANTED in part**.  Dr. Kleiman is **prohibited** from testifying at trial that Mr. Rewis may have passed away irrespective of what time he arrived at the emergency room. However, Dr. Kleiman is **permitted** to testify it is impossible to prove (or determine) that, more likely than not, Mr. Rewis would have survived with earlier treatment.

**SO ORDERED**, this 19th day of August, 2022.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA