# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

TORREY GRIFFIN, individually
and as the legal guardian of the
minors RWR, ABG, and KRR, and as
representative of the Estate of
Shannon Rewis, deceased,

    Plaintiff,

    v.                                                     5:19-CV-92

COFFEE COUNTY, et al.,

    Defendants.

## ORDER

Shannon Rewis swallowed two grams of methamphetamine ("meth") in a plastic bag. After he was arrested at a hotel for drug related activity, the bag broke in his stomach, and he died of meth toxicity while in police custody. Torrey Griffin filed this lawsuit as a representative of both Rewis's estate and his minor children. Each of the fifteen Defendants moved for summary judgment.

Griffin's claim against Angelina Denise Waldron, LPN, is viable, so her motion for summary judgment, dkt. no. 88, is **DENIED as to Count Twelve**. The remainder of the motions, dkt. nos. 88, 92, 93, 94, 97, are **GRANTED**.

## BACKGROUND

*A. Factual Background[1]*

Shannon Rewis was arrested on October 20, 2017, at approximately 3:40 p.m. at the Fountain Inn in Douglas, Georgia. Dkt. No. 90 ¶ 1; Dkt. No. 117-1 ¶ 1. Rewis had been at the hotel for days using drugs and engaging in drug related activity. Dkt. No. 89-1 at 1:10:6-11:7, 1:11:20-12:9, 2:36:3-16.

Rewis was transported to the Coffee County jail, and the booking process began shortly after 4:00 p.m. Dkt. No. 90 ¶ 3; Dkt. No. 117-1 ¶ 3; Dkt. No. 92-5 ¶ 2; Dkt. No. 120 ¶ 1. Defendant Linda Canty booked Rewis into the Coffee County jail. Dkt. No. 92-5 ¶ 12; Dkt. No. 120 ¶ 4. At some point after his arrest, Rewis called his mother, who later testified that Rewis sounded normal and that she did not suspect he was under the influence of any drugs or needed medical attention at the time. Dkt. No. 90 ¶ 4; Dkt. No. 117-1 ¶ 4; Dkt. No. 92-5 ¶¶ 4-5. Rewis did not tell his mother he had swallowed meth. Dkt. No. 90 ¶ 5; Dkt. No. 117-1 ¶ 5.

Rewis was placed in a holding cell in the booking area, where he stayed from approximately 5:02 p.m. until 7:07 p.m. Dkt. No. 90 ¶ 6; Dkt. No. 117-1 ¶ 6; Dkt. No. 92-5 ¶¶ 3, 6. Toward the end of that stretch, Defendants Oscar Wilson and Grant Grantham came on

---

[1] For these purposes, "the Court considers the record in the light most favorable to the Plaintiff[] . . . ." Sheppard v. City of Blackshear, No. 5:12-CV-136, 2015 WL 300458, at *1 (S.D. Ga. Jan. 22, 2015).

duty. Dkt. No. 92-5 ¶ 88; Dkt. No. 120 ¶ 5 (Wilson); Dkt. No. 92-5 ¶ 49; Dkt. No. 120 ¶ 11 (Grantham). Wilson and Grantham were both informed that Rewis was high on drugs and had either "eaten or taken" or "done" two grams of meth. Dkt. No. 117-11 at 4:21:3-22:23 (Wilson); Dkt. No. 110 at 12:16-15:19 (Grantham). And both noticed—despite the fact that the jail was not hot—that Rewis was sweating. Dkt. No. 92-5 ¶¶ 90-91; Dkt. No. 120 ¶¶ 6-7 (Wilson); Dkt. No. 117-11 at 3:18:22-19:17 (Grantham).

Around 7:05 p.m., an inmate told the jail staff that Rewis was not feeling well. Dkt. No. 120-6 at 2; Dkt. No. 108 at 43:6-11. Rewis was taken from the holding cell to a seat in the booking area for a medical intake evaluation. Dkt. No. 90 ¶ 7; Dkt. No. 117-1 ¶ 7; Dkt. No. 92-5 ¶ 7.

Defendant Angelina Denise Waldron, LPN, was contacted to perform a medical intake exam on Rewis. Dkt. No. 90 ¶¶ 8-9, 11; Dkt. No. 117-1 ¶¶ 8-9, 11; Dkt. No. 120 ¶¶ 30-31. The jail staff did not relay any specific concerns to Waldron about Rewis's condition. Dkt. No. 109 at 40:14-21, 43:6-9. But Rewis "seemed agitated," so Sergeant Michael Joyce decided to stay with Nurse Waldron during the intake. Dkt. No. 92-1 ¶¶ 3-4; see also Dkt. No. 90 ¶ 12; Dkt. No. 117-1 ¶ 12. Initially, Rewis was responsive—but he also showed signs of agitation and appeared sweaty. Dkt. No. 90 ¶ 13; Dkt. No. 117-1 ¶ 13. In particular, when Waldron tried to

measure Rewis's vital signs, he stood up abruptly and removed the blood pressure cuff from his arm. Dkt. No. 90 ¶¶ 14-15; Dkt. No. 117-1 ¶¶ 14-15; Dkt. No. 92-1 ¶ 8. Because Rewis was agitated and uncooperative, Waldron was unable to take any of Rewis's other vital signs or complete the exam. Dkt. No. 109 at 28:23-29:12; Dkt. No. 90 ¶ 19; Dkt. No. 117-1 ¶ 19.

Waldron asked Rewis if he had consumed any drugs prior to his arrest. Dkt. No. 90 ¶ 16; Dkt. No. 117-1 ¶ 16. Waldron said at her deposition that Rewis told her he "did two grams" of meth. Dkt. No. 109 at 46:2-9; see also Dkt. No. 92-1 ¶ 6 (affidavit of Michael Joyce, indicating Waldron asked what Rewis "had taken or was on" and Rewis answered "two grams of meth" (internal quotation marks omitted)). But Waldron did not recall Rewis specifying that he had *eaten*, *swallowed*, or *ingested* the meth. Dkt. No. 109 at 69:24-70:5; see also Dkt. No. 92-1 ¶ 7(Joyce "never heard Inmate Rewis say that he had eaten or ingested meth"). Yet, Julia Thomas, the EMT who transported Rewis to Defendant Coffee Regional Medical Center ("CRMC"), indicated that Waldron told *her* Rewis had "*swallowed or ingested*" meth. Dkt. No. 117-12 at 2:27:17-28:6 (emphasis added). Officers at the jail apparently had the same understanding that Thomas did. Dkt. No. 117-2 at 6:27:23-28:3, 7:46:4-8 (Sergeant Grant Grantham); Dkt. No. 117-11 at 4:21:3-

22:23 (Officer Oscar Wilson), 5:28:7-23 (Defendant Shift Sergeant Rosa Brockington).

Particularly important here: Waldron acknowledged that the distinction between "doing" meth versus "eating" or "ingesting" meth matters. In particular, Waldron testified that she did not believe Rewis was in need of emergency care until she was contacted regarding his condition at approximately 10:45 p.m. Dkt. No. 109 at 78:14-25, 84:2-5, 190:18-23. But that statement turned on her recollection that Rewis told her he *did* two grams of meth. Id. at 46:2-9. Waldron separately admitted that, if Rewis had told her that he had *swallowed* two grams of meth, then she would know he was at risk of an overdose and needed emergency care. Id. at 187:16-21; 162:4-21.

Following the intake exam, Rewis was placed in an observation cell. Waldron directed officers to put Rewis in the observation cell because she had not been able to complete the intake exam, and (in her words) Rewis indicated he "may be detoxing"—so she wanted the officers to keep an eye on him. Dkt. No. 109 at 54:21-55:23; Dkt. No. 90 ¶ 20; Dkt. No. 117-1 ¶ 20. Waldron observed Rewis from the intake area for a time, performing intake exams on other inmates, before leaving at some point to pull medications for other inmates. Dkt. No. 109 at 73:2-9, 90:6-15, 174:18-175:6; Dkt. No. 117-28 at 7 (showing Waldron began pulling medications at

19:25 hours, i.e., 7:25 p.m.). And while the officers on duty could not see everything going on inside the cell, dkt. no. 117-5 at 2:37:11-18, officers in the booking area had a clear line of sight, dkt. no. 92-2 ¶ 6; dkt. no. 92-3 ¶ 7.

Some of the officers on duty after the intake exam testified that they saw Rewis sweating or pacing or acting fidgety. Dkt. No. 92-3 ¶¶ 7-9 (Lindsey Griswold); Dkt. No. 92-1 ¶¶ 11-12 (Michael Joyce); Dkt. No. 110 at 42:15-23 (Grant Grantham). But Rewis never stated he was in distress, and he never requested medical attention of any kind. Dkt. No. 90 ¶ 28; Dkt. No. 92-2 ¶¶ 8-9; Dkt. No. 117-1 ¶ 28.

Hours later, around 10:45 p.m., Rewis collapsed in his cell. Dkt. No. 90 ¶ 29; Dkt. No. 117-1 ¶ 29; Dkt No. 92-5 ¶¶ 69, 85, 98; Dkt. No. 120 ¶ 15. An ambulance was called at 10:47 p.m., dkt. no. 90 ¶ 33; dkt. no. 117-1 ¶ 33, and it arrived at 10:53 p.m., dkt. no. 90 ¶ 34; dkt. no. 117-1 ¶ 34. Rewis was taken to the hospital, where he died the following afternoon. Dkt. No. 90 ¶¶ 35-36; Dkt. No. 117-1 ¶¶ 35-36. The autopsy revealed a loosely tied, torn, plastic baggie of meth inside Rewis's stomach, leading to death from meth toxicity. Dkt. No. 90 ¶ 37; Dkt. No. 117-1 ¶ 37; Dkt. No. 120 ¶ 16.

Rewis's treating physician at the hospital, Dr. James Sinclair, testified that he believed the delay in treating Rewis's

condition "contribute[d]" to, not "caused," Rewis's death. Dkt.
No. 117-9 at 13:95:10-21.

*B. Procedural Background*

Torey Griffin filed this lawsuit both on behalf of Rewis's
estate and as the legal guardian of Rewis's minor children. See
generally Dkt. No. 1. Griffin alleges nearly two dozen claims.
Counts One through Fifteen allege constitutional claims under 42
U.S.C. § 1983, against:

- Coffee County, dkt. no. 1 ¶¶ 71-81 (Count One);

- Sheriff Doyle Wooten, id. ¶¶ 82-94 (Count Two);

- Jail Administrator Kim Phillips, id. ¶¶ 95-107 (Count Three);

- Sergeant Grantham, id. ¶¶ 108-15 (Count Four);

- Sergeant Brockington, id. ¶¶ 116-23 (Count Five);

- Officer Joyce, id. ¶¶ 124-32 (Count Six);

- Officer Canty, id. ¶¶ 133-40 (Count Seven);

- Corporal Wilson, id. ¶¶ 141-49 (Count Eight);

- Officer Courson, id. ¶¶ 150-58 (Count Nine);

- Officer Taylor, id. ¶¶ 159-67 (Count Ten);

- Officer Griswold, id. ¶¶ 168-76 (Count Eleven);

- Nurse Waldron, id. ¶¶ 177-85 (Count Twelve);

- CRH Health Care ("CRH"), id. ¶¶ 186-94 (Count Thirteen);

- Emergency Physicians LLC, id. ¶¶ 195-203 (Count Fourteen); and

- CRMC, <u>id.</u> ¶¶ 204-13 (Count Fifteen).

Griffin's remaining claims are state law claims, including medical malpractice against:

- Nurse Waldron, <u>id.</u> ¶¶ 214-22 (Count Sixteen);

- Waldron's employers, CRMC, <u>id.</u> ¶¶ 223-27 (Count Seventeen) and Emergency Physicians, LLC (Count Nineteen), <u>id.</u> ¶¶ 232-35; and

- CRMC's parent company, CRH, <u>id.</u> ¶¶ 228-31 (Count Eighteen).

Finally, Griffin alleges gross negligence against everyone (Count Twenty), <u>id.</u> ¶¶ 236-39, and seeks punitive damages and attorney fees under Georgia law (Counts Twenty-One and Twenty-Two), <u>id.</u> ¶¶ 240-46.

During discovery, Griffin offered Dr. Kris Sperry as an expert witness on causation. Dkt. No. 74-1. Sperry opined that failure to arrange immediate transfer to the hospital caused Rewis's death. <u>Id.</u>[2] Defendants moved to exclude Sperry's opinion, arguing that he was not qualified to offer an opinion on the survivability of a meth overdose—and, thus, that his opinions are speculative and

---

[2] Defendants CRH and CRMC offered as an expert Dr. Richard Kleinman, who opines that "Rewis may have passed away irrespective of what time he arrived at the emergency room following his encounter with Nurse Waldron," and, in particular, that "there are too many unknowns and too many variables involved to be able to reasonably predict a favorable outcome for [ ] Rewis." Dkt. No. 78-4 at 2; <u>see also</u> Dkt. No. 96 (Griffin moving for the exclusion of this opinion and those of Defendants' other experts). For the reasons discussed below, however, there is no need to rely on Dr. Kleinman's opinions for purposes of summary judgment.

unreliable. See generally Dkt. Nos. 87, 137. The Magistrate Judge granted the motion, ruling that "Dr. Sperry is not permitted" to opine that "Rewis would not have died if he had been provided earlier treatment," or to offer any opinion about "what treatment would have been provided if [ ] Rewis had been transported to the hospital [earlier]," as well as "the effect of" Nurse Waldron's "failure to ensure [Rewis] immediately received medical care after learning he ingested or consumed two grams of methamphetamine[.]" Dkt. No. 147 at 13-14. The objections to that order were overruled. Dkt. No. 150.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" where the evidence would allow "a reasonable jury [to] return a verdict for the nonmoving party." FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" only if it "might affect the outcome of the suit under the governing law." Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  The movant must show the court that there is an absence of evidence to support the nonmoving party's case.  See id. at 325.  If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. See Anderson, 477 U.S. at 257. The nonmovant may satisfy this burden in one of two ways.  First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)).  Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency."  Id. at 1117.  Where the nonmovant attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the [movant is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

**DISCUSSION**

Defendants' motions for summary judgment are meritorious, with the exception of one claim. By way of summary:

1) First, Griffin's official capacity claims are barred by Eleventh Amendment immunity, so the Sheriff's Department Defendants[3] are all entitled to summary judgment to that extent.

2) Next, Griffin's state law claims fail because his lone causation expert has been excluded—meaning there is no competent evidence to establish causation on the underlying claims for malpractice and gross negligence under Georgia law. The failure of those underlying claims for malpractice and gross negligence also dooms the related claims for punitive damages and attorney fees.

3) As for federal claims, Griffin abandoned his section 1983 claims against several of the officers.

4) Regardless, because there is no evidence any of the officer Defendants (i.e., the Sheriff's Department employees, excluding the Jail Administrator and the Sheriff himself) subjectively knew that Rewis needed emergency medical care,

---

[3]  The Sheriff's Department Defendants are Sheriff Wooten, Jail Administrator Phillips, Sergeant Grantham, Sergeant Brockington, Officer Joyce, Officer Canty, Corporal Wilson, Officer Courson, Officer Taylor, Officer Griswold, and Nurse Waldron.

Griffin cannot show a constitutional violation, and the officers are entitled to qualified immunity.

5) Without viable claims against the officers, Griffin's <u>Monell</u>[4] claims against Coffee County and Sheriff Wooten also, necessarily, fail. Griffin concedes there is insufficient evidence for a <u>Monell</u> claim against Emergency Physicians LLC. And he offers no defense of the claims against CRH and CRMC— so those are also abandoned.

6) That leaves Nurse Waldron. Waldron admits that she knew an inmate who swallowed two grams of meth would be in serious danger and require emergency care. That in mind, Griffin's section 1983 claim against Nurse Waldron is viable because there is a fact issue regarding whether she knew Rewis "swallowed" or "ingested" meth, as opposed to merely having "done" or "taken" meth in some other way. That is enough to reach a jury on a deliberate indifference claim.

## I. **Griffin's official-capacity claims are barred.**

Beginning with the jurisdictional issue, Griffin asserts several claims against Coffee County Sheriff's Department officers in their official capacities. <u>See</u> <u>generally</u> Dkt. No. 1 (Counts Two through Twelve).

---

[4] <u>See</u> <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658 (1978).

Because a suit against a person in his official capacity is effectively a suit against the office itself, <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985), Griffin's official capacity claims implicate sovereign immunity, the Eleventh Amendment, and this Court's jurisdiction. <u>See, e.g.</u>, <u>Hood v. Lawrence</u>, No. 5:21-CV-64, 2022 WL 889964, at *5-7 (S.D. Ga. Mar. 25, 2022) (citing <u>Lake v. Skelton</u>, 840 F.3d 1334, 1340-41 (11th Cir. 2016)) (collecting cases); <u>Seminole Tribe of Fla. v. Florida</u>, 517 U.S. 44, 64 (1996) (through the Eleventh Amendment, "state sovereign immunity limit[s] the federal courts' jurisdiction under Article III").

Griffin does not defend his claims against that conclusion—he merely asks the Court to "withhold any ruling" until the Eleventh Circuit has issued an en banc decision in <u>Andrews v. Biggers</u>, 996 F.3d 1235 (11th Cir. 2021). Dkt. 121 at 22-23. Even if the Eleventh Circuit were to take the <u>Andrews</u> case en banc—which it has not done to date, <u>see</u> Dkt. No. 20-11469[5]—this Court is bound by existing precedent, which compels the conclusion that Griffin's official capacity claims are barred by sovereign immunity and the Eleventh Amendment. <u>See</u> <u>Hood</u>, 2022 WL 889964, at *5-7 (citing <u>Lake</u>, 840 F.3d at 1340-41). Thus, the Sheriff's Department Defendants are

---

[5] On May 7, 2021, the Eleventh Circuit affirmed the Northern District of Georgia's application of Eleventh Amendment immunity to the sheriff in that case. The plaintiff-appellant then moved for a rehearing en banc. Indeed, on September 22, 2022, the Eleventh Circuit vacated its previous Order which withheld issuance of the mandate in this appeal.

entitled to summary judgment on Griffin's official capacity claims. Their motions for summary judgment, dkt. nos. 88, 92, 93, are **GRANTED** to that extent.

## II. Griffin's state law claims fail because he cannot establish that any negligence caused Rewis harm.

Griffin's claims for medical malpractice, gross negligence, punitive damages, and attorney fees (all brought under Georgia law) fail because Dr. Sperry's proposed expert opinion—the only competent evidence offered on the subject of causation—is inadmissible.

The elements of any negligence claim in Georgia "are the existence of a legal duty; breach of that duty; a causal connection between the defendant's conduct and the plaintiff's injury; and damages." Boller v. Robert W. Woodruff Arts Ctr., Inc., 716 S.E.2d 713, 716 (Ga. Ct. App. 2011) (citation omitted); see also Anthony v. Chambless, 500 S.E.2d 402, 404 (Ga. Ct. App. 1998) (explaining that a medical malpractice claim requires a plaintiff to show these same elements). Particularly relevant here, "there must be . . . a legally attributable causal connection between the conduct and the resulting injury." City of Douglasville v. Queen, 514 S.E.2d 195, 197 (Ga. 1999). "Negligence alone" is not enough. Anthony, 500 S.E.2d at 404. "It must be proven that the injury complained of proximately resulted from" the defendant's negligence. Id. And

"Georgia law is well settled that '[t]he defendant's conduct is not a cause of the event, if the event would have occurred without it.'" Mann v. Taser Int'l., Inc., 588 F.3d 1291, 1304 (11th Cir. 2009) (quoting General Motors Corp. v. Davis, 233 S.E.2d 825, 927 (Ga. Ct. App. 1977)).

Thus, in cases like this one, "there can be no recovery where there is no showing to any reasonable degree of medical certainty that the injury/death could have been avoided had the physician complied with the applicable standard of care." Abrams v. United States, No. 1:14-CV-1131-MHS, 2014 WL 12452438, at *4 (N.D. Ga. Sept. 4, 2014) (citing Walker v. Giles, 624 S.E.2d 191, 197 (Ga. Ct. App. 2005)); see also Cowart v. Widener, 697 S.E.2d 779, 786 (Ga. 2010) (requiring expert testimony for issues of medical causation outside the ken of ordinary experience); Zwiren v. Thompson, 578 S.E.2d 862, 867 (Ga. 2003) (requiring that expert testimony in medical negligence cases "state an opinion regarding proximate causation in terms stronger than that of medical possibility, i.e., reasonable medical probability or reasonable medical certainty").

Griffin does not disagree—he simply insists that (at least some form of) Dr. Sperry's causation opinions *are* admissible. See Dkt. No. 117 at 21-22 (medical malpractice); see also id. at 22 (gross negligence), 23-24 (punitive damages), 25 (attorney's

fees). The Court recently ruled that Sperry was *not* qualified to opine "(1) [that] Rewis would not have died if he had been provided earlier treatment; (2) [on] the effect of . . . Waldron['s] [ ] failure to ensure [Rewis] immediately received medical care after learning he ingested or consumed two grams of methamphetamine; and (3) [on] what treatment would have been provided if Mr. Rewis had been transported to the hospital [earlier]." Dkt. No. 147 at 13-14; Dkt. No. 150 (overruling Griffin's objections). At the hearing and in his supplemental brief, Griffin proposed that these rulings would not prevent Dr. Sperry from offering opinions about the failure to *transport,* as opposed to treat, Rewis. Dkt. No. 163 at 3-5. But then, everyone agrees the purpose of transporting Rewis would be to secure medical treatment—so the wordplay is (at best) a distinction without a difference.

Similarly, Griffin argues that Dr. Sperry's unexcluded testimony creates the mere "possibility" of causation, which, when taken in conjunction with treating physician Dr. Sinclair's testimony, is sufficient to establish causation. Dkt. No. 163 at 7 (citing Est. of Patterson v. Fulton-DeKalb Hosp. Auth., 505 S.E.2d 232, 234-36 (Ga. Ct. App. 1998)). Unlike the cases where a plaintiff has successfully supplemented expert testimony establishing a "possibility" of causation with non-expert evidence, Dr. Sperry's testimony does not create even the mere

"possibility" of causation because he cannot opine on the key issues that establish causation. See Dkt. No. 147 at 13-14; cf. Jacobs v. Pilgrim, 367 S.E.2d 49, 51-52 (Ga. Ct. App. 1988) (finding that the expert's testimony that stress was "one possible explanation" of the appellant's problems, in conjunction with non-expert evidence, was sufficient to establish an issue on causation); Nat'l Dairy Prod. Corp. v. Durham, 154 S.E.2d 752, 754 (Ga. Ct. App. 1967) (holding that the expert's testimony establishing a "possibility" of causal relation was sufficient to support a finding for the plaintiff on causation, when taken in conjunction with other non-expert evidence). Therefore, this argument also fails.

Further, Griffin contends that summary judgment should be denied because it is common knowledge that an undiagnosed and untreated meth overdose will cause or contribute to death. Dkt. No. 163 at 10 (citing McClure v. Clayton Cnty. Hosp. Auth., 336 S.E.2d 268, 269-71 (Ga. Ct. App. 1985)). The Georgia Supreme Court has held, "in deciding whether the plaintiff is required to come forward with expert testimony to withstand a defense motion for summary judgment, the critical question is not whether the causation element involves a 'medical question' in the generic sense of the term." Cowart, 697 S.E.2d at 786. "Rather, it is whether, in order to decide that the defendant's conduct

17

proximately caused the plaintiff's injury, a lay jury would have to know the answers to one or more 'medical questions' that, as the case law has defined that term, can be answered accurately only by witnesses with specialized expert knowledge." Id. A "medical question," in the common sense of the term, is one "of or connected with the practice or study of medicine," such that "almost *all* deaths could be said to involve 'medical questions' relating to causation." Id. at 784. Cases where no expert is needed usually involve situations where the plaintiff is "not alleging negligence in the diagnosis of or the method of treatment, but negligence in the *performance* of that treatment," Killingsworth v. Poon, 307 S.E.2d 123, 126 (Ga. Ct. App. 1983) (citing Caldwell v. Knight*,* 89 S.E.2d 900, 903 (Ga. Ct. App. 1955)), and where there would be such "'pronounced results' indicative of possibly negligent medical treatment," such as "when a doctor, while stitching a wound on his patient's cheek, by an awkward move, thrusts his needle into the patient's left eye, or where a leg or limb which has been broken is shorter than the other after treatment." Killingsworth, 307 S.E.2d at 125.

While perhaps it is within the common knowledge of juries that ingesting two grams of meth could result in death, to determine causation, a jury would need to know whether Nurse Waldron's failure to diagnose a meth overdose and immediately

transport Rewis to the hospital caused or contributed to his death. Cowart, 697 S.E.2d at 786. This is a "medical question" that "can be answered accurately only by witnesses with special expert knowledge." Id.; see also Dkt. No. 147 at 13-14 (prohibiting Dr. Sperry from offering an opinion on the effect of Nurse Waldron's failure to ensure that Rewis immediately received medical care). Further, Griffin is alleging negligence in diagnosis and the method of treatment that Rewis received, not in the performance of treatment, and this case does not involve the type of "pronounced result" indicative of negligent treatment that Georgia courts recognize. See Killingsworth, 307 S.E.2d at 125. Instead, this case involves the complicated question of whether Nurse Waldron's alleged failure might have caused or contributed to the death of Rewis who had already ingested a large amount of meth.

Thus, lack of expert testimony on causation dooms Griffin's state law claims across the board. See Lewis v. Meredith Corp., 667 S.E.2d 716, 719 (Ga. Ct. App. 2008) ("Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails." (citing Benefit Support, Inc. v. Hall Cnty., 637 S.E.2d 763, 771 (Ga. App. 2006))); Jefferson v. Houston Hosps., Inc., 784 S.E.2d 837, 845 (Ga. Ct. App. 2016) ("[D]erivative claims of attorney fees and punitive damages will not lie in the absence of a finding of compensatory damages on an underlying claim"

(quoting D.G. Jenkins Homes, Inc. v. Wood, 582 S.E.2d 478, 482 (Ga. Ct. App. 2003))); cf. Wilson v. City of Douglasville, No. 1:17-cv-00634, 2019 U.S. Dist. LEXIS 242547, at *14 (N.D. Ga. Sept. 26, 2019).

Defendants' motions for summary judgment as to Griffin's negligence-based state law claims (Counts Sixteen through Twenty-Two), dkt. nos. 88, 92, 93, 94, and 97, are therefore **GRANTED**.[6]

---

[6] Defendants argue that Sperry's exclusion also bars Griffin's claims under federal law. Dkt. Nos. 89 at 22-23, 92-6 at 26, 93-2 at 18-19; see also Dkt. No. 98 at 1-2 (incorporating the other Defendants' arguments). That is incorrect. The causation element of a § 1983 claim "is that a defendant have a causal connection to the *constitutional* harm." See Goebert v. Lee, 510 F.3d 1312, 1327 (11th Cir. 2007) (emphasis added). In a case like this one, "the [deliberate] delay in care" for a serious medical need "is, itself, a wanton infliction of pain," and thus "a constitutional violation." Valderrama v. Rousseau, 780 F.3d 1108, 1116 (11th Cir. 2015); cf. Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 899 (6th Cir. 2004) (The constitutional violation "is not premised upon the 'detrimental effect' of [a] delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm"; so "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment . . . their conduct in causing the delay creates the constitutional infirmity" and "the effect of the delay goes to the extent of the injury, not the existence of a serious medical condition."). After all, even if a plaintiff fails to show damages, he may still recover nominal damages for the violation of a constitutional right. Brooks v. Warden, 800 F.3d 1295, 1308 (11th Cir. 2015) (holding nominal damages were appropriate in a deliberate indifference to medical needs claim). That is why "[c]ausation . . . can be shown [merely] by personal participation in the constitutional violation." Goebert, 510 F.3d at 1327 (citing Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986)(per curiam)). Thus, Dr. Sperry's exclusion does not spell the end of Griffin's constitutional claims. Cf. Wilson, 2019 U.S. Dist. LEXIS 242547, at *23.

### III. Griffin abandoned his § 1983 claims against several of the officers.

Turning to the federal claims, the first order of business is straightforward. Griffin's briefing fails to defend his claims regarding officers Courson, Taylor, and Griswold and jail administrator Phillips. See generally Dkt. No. 121 at 12-17 (discussing only officers Wilson and Grantham's alleged deliberate indifference to Rewis's condition);[7] id. at 18-22 (discussing only Sheriff Wooten and the County itself regarding the failure to train). Thus, Griffin's claims against Courson, Taylor, Griswold and Phillips have been abandoned. State Farm Mut. Auto. Ins. Co. v. Marshall, 175 F. Supp. 3d 1377, 1385 (S.D. Ga. 2016) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." (alterations accepted) (quoting Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014))).[8]

---

[7] While this section of Griffin's brief also fails to explain how officers Canty or Brockington violated Rewis's constitutional rights, Griffin elsewhere shows that there is at least a fact issue regarding whether they knew that Rewis had "eaten" as opposed to merely "taken" two grams of meth. See Dkt. No. 121 at 2 (Canty informed Wilson that Rewis had either "eaten or taken" two grams of meth); Dkt. No. 117-11 at 5:28:7-23 (Wilson stating that Brockington told Grantham that Rewis had "eaten or taken" two grams of meth). Thus, the claims against them are analyzed along the same lines as Wilson and Grantham.

[8] After the hearing, see dkt. no. 160, Griffin also stipulated in writing that Courson, Joyce, and Griswold were entitled to summary judgment, dkt. no. 159 at 2.

**IV. The remaining officers are shielded by qualified immunity.**

"Government officials performing discretionary functions generally are shielded from liability or suit for civil damages [so long as] their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Est. of Cummings v. Davenport, 906 F.3d 934, 939 (11th Cir. 2018) (alterations accepted) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Where it applies, it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Courts in this Circuit "use[ ] a two-step analysis to determine whether qualified immunity is available." Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995) (citations omitted); cf. Echols v. Lawton, 913 F.3d 1313, 1324 (11th Cir. 2019). "First, the defendant must show that [he or] she acted within the scope of [his or] her discretionary authority." Lenz, 51 F.3d at 1545 (citations omitted). If the defendant can do that, then "the plaintiff must show that the defendant violated the plaintiff's clearly established statutory or constitutional rights." Id. Griffin does not contest the discretionary authority prong, so the question is whether there is a fact issue on the alleged violation of Rewis's clearly established rights. Cf. Ingram v. Kubik, 30 F.4th 1241, 1250 (11th Cir. 2022).

Griffin's claims against these officers are for deliberate indifference, see dkt. no. 1 ¶¶ 108-76 (Counts Four through Eleven), so he "must shoulder three burdens." Goebert v. Lee Cnty., 510 F.3d 1312, 1326 (11th Cir. 2007). First, he must "satisfy [an] objective component by showing that []he had a serious medical need." Id. (citation omitted).  Second, he "must satisfy [a] *subjective* component by showing that the prison official acted with deliberate indifference to h[is] serious medical need." Id. (emphasis added). And third, if he succeeds in those first two steps, he must show that a given defendant's wrongful conduct caused the constitutional injury. Id.[9]

Griffin cannot satisfy that test. The evidence indeed shows that Rewis had an objectively serious medical need—but Griffin cannot show that any of the officers were *deliberately* indifferent to that need. Thus, his claims fail, and there is no need to reach the causation question.[10]

---

[9] Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause, rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause (which applies to duly sentenced prisoners). Andujar v. Rodriguez, 486 F.3d 1199, 1203 n.3 (11th Cir. 2007); Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1185 n.19 (11th Cir. 1994), overruled in part on other grounds by Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002) (collecting cases). But the standard for assessing these claims is the same under either amendment. Hill, 40 F.3d at 1185 n.19; Andujar, 486 F.3d at 1203 n.3.

[10] This also obviates the need to decide whether the law was "clearly established" at the time of the officers' conduct.

A.  *Serious Medical Need*

A serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Goebert, 510 F.3d at 1326 (quoting Hill, 40 F.3d at 1187). "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019) (quoting Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003)).

There is no dispute in this case that ingesting or swallowing two grams of meth is a highly dangerous, even fatal, dosage—and thus no *genuine* dispute that Rewis actually had an objectively serious medical need. See, e.g., Dkt. No. 109 at 187:16-21, 162:4-21 (Nurse Waldron); Dkt. No. 117-9 at 9:79:12-18 (Dr. Sinclair).

B.  *Deliberate Indifference*

Having established that Rewis had a serious medical need, Griffin must show: "(1) [that the officers had] subjective knowledge of a risk of serious harm [to Rewis]; (2) [that they] disregard[ed] . . . that risk; (3) [and that they did so] by conduct that is more than gross negligence." Goebert, 510 F.3d at 1326-27 (alteration accepted). Since the officers merely observed Rewis and did not intervene or arrange medical care at all, the subjective-knowledge component is the key here.

"Whether a particular defendant has subjective knowledge . . . is a question of fact[,] 'subject to demonstration in the usual ways.'" Id. at 1327 (quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)). "[A] factfinder may [even] conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Goebert, 510 F.3d at 1327 (quoting Farmer, 511 U.S. at 842). But that inference "cannot be conclusive," because "people are not always conscious of what reasonable people would be conscious of[.]" Farmer, 511 U.S. at 842 (quoting 1 W. LaFave & A. Scott, Substantive Criminal Law §§ 3.74, 335 (1986)). And though the defendant need not know of the *specific* danger or condition, Stukenberg v. Abbott, 907 F.3d 237, 252 (5th Cir. 2018), he must know that, if no action is taken, the detainee faces "a substantial risk of serious harm[.]" Farmer, 511 U.S. at 837; see also Taylor, 920 F.3d at 734 (same).

In Griffin's view, there is sufficient evidence to show deliberate indifference to a known and serious need because "Defendants had actual knowledge of Rewis's methamphetamine consumption; [they knew that] he was suffering physical reactions to that consumption[,] and [they] took no action to provide any medical care, in direct contradiction of . . . the Jail Policy and Procedures manual." Dkt. No. 121 at 13. And indeed, contrary to Defendants' assertions, there is evidence that Grantham, Canty,

Wilson, Brockington, and Joyce "had specific information about what [Rewis] had taken . . . ." Dkt. No. 92-6 at 13; <u>see also</u> Dkt. No. 117-2 at 6:27:23-28:3, 46:4-8 (Sergeant Grant Grantham); Dkt. No. 117-11 at 4:21:3-22:23 (Officer Oscar Wilson via Officer Linda Canty), 5:28:7-23 (Defendant Shift Sergeant Rosa Brockington); Dkt. No. 92-1 ¶¶ 3-4 (Joyce was in the room with Waldron during the intake exam).

The problem for Griffin is that—unlike with Nurse Waldron—Griffin does not point to any evidence that any of these Defendants *subjectively knew* that ingesting two grams of meth was a potentially serious (even lethal) dose. Dkt. No. 121 at 14-15 (discussing only Wilson and Grantham). Waldron's knowledge cannot be "imputed" to the officers or considered "collective knowledge"—and thus "cannot serve as the basis for a claim of deliberate indifference." <u>Burnette v. Taylor</u>, 533 F.3d 1325, 1331 (11th Cir. 2008). "Each individual Defendant must be judged separately and on the basis of what that person knows." <u>Id.</u>   So even though Wilson and Grantham knew that Rewis had either "eaten or taken" or "done" two grams of meth, dkt. no. 117-11 at 4:21:3-22:23 (Wilson); dkt. no. 110 at 12:16-15:19 (Grantham), they cannot be liable without some evidence that they knew—as Waldron did—that ingesting meth that way put Rewis at serious risk of harm.

At best, Griffin characterizes Grantham's testimony as indicating that "methamphetamine intoxication had the potential to be a serious medical event," dkt. no. 121 at 14. Griffin's counsel repeated this point at the hearing. But a closer look at the relevant portions of Grantham's deposition reveal that Grantham agreed only that "methamphetamine [could] cause serious intoxication to the extent that the booking officer [should, under jail policy,] refuse the person's admittance [to the jail]" and arrange for medical attention. Dkt. No. 110 at 35:23-36:2. And even that, Grantham testified, would depend on the person's behavior or symptoms. Id. at 36:11-15.

Nothing about that shows subjective knowledge that Grantham (let alone any of the other officers) subjectively knew Rewis was in serious danger. There is no evidence that the symptoms the officers *were* aware of—like fidgeting and sweating—would have shown them that Rewis was in serious danger. And Griffin does not point to any evidence from which a jury could simply *infer* subjective knowledge because "the risk was obvious." Dkt. No. 121 at 12 (quotation marks omitted); see also Farmer, 511 U.S. at 843 (a showing that the defendant was aware of "evidence [indicating] that a substantial risk . . . was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past'" might "be sufficient to permit a trier of fact to find that the

defendant-official had actual knowledge of the risk" (quotation marks omitted)). To the contrary, Grantham testified it was fairly common for the jail to house inmates under the influence of meth—most "would be just acting out or real jittery." Dkt. No. 110 at 36:24-37:24.

Once the officers were told by another inmate that Rewis was not feeling well, there is no dispute that they followed the general practice to contact medical personnel for their assessment. Id. at 36:20-23; 20:17-21:13. Waldron *gave* her assessment (such as it was, not having been completed), telling the officers to simply keep an eye on Rewis. See Dkt. No. 109 at 54:21-55:23; Dkt. No. 90 ¶ 20; Dkt. No. 117-1 ¶ 20.[11] Thus, the evidence simply does not permit the inference that the officers disregarded a known, serious need.[12]

---

[11] This also means that Griffin cannot show the officers' "conduct [was] . . . more than gross negligence," Goebert, 510 F.3d at 1327 (alteration accepted), since "officials are [generally] entitled to rely on medical judgments made by medical professionals responsible for prisoner care," Williams v. Limestone County, 198 F. App'x 893, 897 (11th Cir. 2011) (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993); White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988)); cf. Porter v. Baxter, No. 5:10cv206, 2010 WL 3835111, at *3 (N.D. Fla. 2010) ("[N]on-medical officers are entitled to defer to the professional judgment of the facility's medical officers on questions of prisoner's medical care . . . ."). Thus, relying on Nurse Waldron's assessment and instructions may have been unwise, and even negligent, but it was not deliberate indifference. Whitley v. Albers, 475 U.S. 312, 319 (1986) ("it is obduracy and wantonness, not inadvertence or error in good faith," that violates the constitution).

[12] By that same token, it is not enough that the officers perhaps *should have* known better. That, too, does not establish deliberate indifference. Cf. Steele v. Choi, 82 F.3d 175, 179 (7th Cir. 1996) (finding that asking what a "reasonable [official]" would have done "is an objective test,

Failing all else, Griffin argues that the officer Defendants violated various policies in failing to refuse Rewis's admission to the jail and send him to the hospital instead. Dkt. No. 121 at 15-16. But a violation of policy, alone, does not establish a constitutional violation. See Edwards v. Gilbert, 867 F.2d 1271, 1276-77 (11th Cir. 1989) ("[O]fficials sued for constitutional violations lose no immunity simply because their conduct violates some state statute or regulation." (citing Davis v. Scherer, 468 U.S. 183(1984))). And indeed—Griffin never explains how the mere violation of these policies would constitute evidence that the officer Defendants subjectively knew and ignored a serious risk of harm to Rewis. Thus, regardless of whether the officers failed to observe jail policy, Griffin's § 1983 claims against them fail.

* * *

In sum, while there is no genuine dispute that Rewis had a serious medical need, there is no evidence that the officer Defendants knew but disregarded the severity of that need. As a result, the officers did not violate Rewis's constitutional rights, they are entitled to qualified immunity, and their motions

---

not a subjective one," and that Farmer "explicitly adopts a subjective test" making "no exceptions for medical treatment cases" (quotation marks omitted)).

for summary judgment, dkt. no. 92, are **GRANTED** as to Counts Four through Eleven.[13]

### V. Griffin's <u>Monell</u> claims all fail or are abandoned.

Because Griffin's claims against the officer Defendants fail, his <u>Monell</u> claims against Sheriff Wooten and Coffee County do as well. And Griffin concedes (or, at a minimum, abandons) his <u>Monell</u> claims against the medical entity Defendants.

*A. Sheriff Wooten, Administrator Phillips, and Coffee County*

"[S]upervisory officials are not[ ]liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" <u>Hartley v. Parnell</u>, 193 F.3d 1263, 1269 (11th Cir. 1999) (quoting <u>Belcher v. City of Foley</u>, 30 F.3d 1390, 1396 (11th Cir. 1994)). To be liable, an official who did not personally participate in an incident like this one must take action that amounts "to an intentional choice, not merely an unintentionally negligent oversight." <u>Rhyne v. Henderson Cnty.</u>, 973 F.2d 386, 392 (5th Cir. 1992) (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 387 (1989); <u>Manarite v. City of Springfield</u>, 957 F.2d 953, 959 (1st Cir. 1992)).

To that end, Courts apply a three-part test to determine a supervisor's (or supervising entity's) liability in a § 1983 case:

---

[13] To be clear, this conclusion means that Griffin's claims against Courson, Taylor, and Griswold would fail even if he had not abandoned his claims against them.

>   (1) whether, in failing adequately to train and
>   supervise subordinates, [the supervisor or entity] was
>   deliberately indifferent to an inmate's [ ] health care
>   needs;
>
>   (2) whether a reasonable person in the supervisor's
>   position would know that his failure to train and
>   supervise reflected deliberate indifference; and
>
>   (3) whether [the] conduct was causally related to the
>   constitutional infringement by [the] subordinate.

Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990) (footnote omitted).

But, critically, "[t]here can be no supervisory liability . . . if there was no underlying constitutional violation" by the supervised officers. Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008). "Without an underlying violation of [Rewis's] constitutional rights, [Sheriff Wooten and Administrator Phillips, in their individual capacities,] cannot be liable . . . for a failure to train [the officers] and [the] County cannot be liable on the ground that its policy caused a constitutional violation." Id.; cf. Rooney v. Watson, 101 F.3d 1378, 1381-82 & n.4 (11th Cir. 1996) (stating that "our finding that the Rooneys did not suffer any constitutional deprivation makes it unnecessary to consider Volusia County's policy or custom" or failure to train). Because Griffin cannot show that the officer Defendants committed a constitutional violation, supra, Sheriff Wooten,

Administrator Phillips, and Coffee County[14] cannot be held liable under a theory of supervisory liability. Their motions for summary judgment, dkt. nos. 93, 94, are therefore **GRANTED** on this issue.[15]

*B. Emergency Physicians*

Griffin, to his credit, concedes that he "cannot put forth sufficient evidence" that "[Emergency Physicians] had a custom or policy [showing] deliberate indifference to Mr. Rewis' constitutional rights," and, therefore, that "summary judgment . . . on this claim is appropriate." Dkt. No. 117 at 43. Thus, Emergency Physician's motion for summary judgment, dkt. no. 88, is **GRANTED** as to Count Fourteen.

*C. CRH & CRMC*

Griffin also abandoned his Monell claims against CRH and CRMC. In their motion for summary judgment, CRMC and CRH incorporate the arguments made by Nurse Waldron and Emergency Physicians LLP, dkt. no. 98 at 1-2, including that CRH and CRMC  "[1] had [no] custom or policy that [a] constituted deliberate indifference to Rewis'

---

[14] A suit against a county officer in their official capacity is treated as a claim against the county. Brooks v. George Cnty., 84 F.3d 157, 165 (5th Cir. 1996); see also Hafer v. Melo, 502 U.S. 21, 26-27 (1991). Griffin's claims against Sheriff Wooten and Administrator Phillips in their official capacities, dkt. no. 1 ¶¶ 82-92 (Count Two), 95-101 (Count Three), are therefore treated as claims against the County. Thus, even if the claims against Sheriff Wooten and Administrator Phillips in their official capacities were not barred by Eleventh Amendment immunity, supra, those claims would fail.

[15] Here as well, this conclusion means that Griffin's claims against Administrator Kim Phillips would fail even if he had not abandoned his claims against her.

constitutional rights or . . . [b] caused the violation," and [2] that "[t]here is no evidence than [CRH and CRMC] knew and disregarded a specific training need" that would support a failure-to-train claim, dkt. no. 89 at 23-24.

Griffin's response to CRH and CRMC's motion appears to be a carbon copy of his response to Waldron, LPN, and Emergency Physicians' motion. Compare Dkt. No. 117 with Dkt. No. 119. As a result, the only part of Griffin's response addressing an entity defendant is directed at Emergency Physicians—conceding there is no evidence of a custom or policy-based claim. See Dkt. No. 119 at 43. It is not clear whether Griffin means to make a similar concession regarding CRH and CRMC—but, regardless, he has not defended his claims against them.[16]

As with the unmentioned officers, therefore, the "fail[ure] to respond to an argument or otherwise address [this] claim" means "the Court deems such argument or claim abandoned." Marshall, 175 F. Supp. 3d at 1385 (quoting Jones, 564 F. App'x at 434). So CRH and CRMC's motion for summary judgment, dkt. no. 97, is **GRANTED** as to Counts Thirteen and Fifteen.

---

[16] And, in any event, Griffin's description of the relevant policies and procedures indicates an objection to Waldron's compliance with CRMC policy—not the policies themselves. See Dkt. No. 119 at 17-18.

## VI. Griffin's deliberate indifference claim against Nurse Waldron is viable.

Turning, at last, to the heart of the case, Nurse Waldron's motion for summary judgment on Griffin's deliberate indifference claim, dkt. no. 88, must be **DENIED**. Put simply, there is evidence in the record that would permit a jury to find Nurse Waldron knew Rewis had "swallowed" or "ingested," as opposed to merely "done" (generally meaning smoking) meth. Since Nurse Waldron testified that, had she known Rewis swallowed the meth, she would have known he was at risk of an overdose—the ultimate conclusion about whether she *was, in fact,* deliberately indifferent to that risk, belongs to the jury.

As discussed, "[t]o prevail on a claim of deliberate indifference, [a] [p]laintiff[] must show: (1) a serious medical need; (2) defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's [constitutional] injury." Mann, 588 F.3d at 1306-07 (citing Goebert, 510 F.3d at 1326); see also Taylor v. Hughes, 920 F.3d 729, 733 (11th Cir. 2019). "Neither 'inadvertent failure to provide adequate medical care' nor a physician's 'negligen[ce] in diagnosing or treating a medical condition' states a 'valid claim of medical mistreatment . . . .'" Hill, 40 F.3d at 1186 (quoting Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)). Instead, "a [plaintiff] must [show] acts or omissions sufficiently harmful to

evidence *deliberate* indifference to serious medical needs." <u>Id.</u> (emphasis added) (quoting <u>Estelle</u>, 429 U.S. 97, 106).

Waldron argues that she was not deliberately indifferent because she did not know that Rewis had "eaten"—as opposed to "taken"—meth. Dkt. No. 89 at 20-22. But Waldron fails to acknowledge the fact issue on that point. <u>See</u> <u>supra</u> note 7. If Waldron indeed told the EMT and various jail staff that Rewis had "swallowed or ingested" meth, then a jury could infer that she *did* know Rewis had "swallowed" rather than "taken" or "done" meth, <u>see</u> <u>id.</u>, and therefore conclude that (by Waldron's own admission) she knew Rewis was at risk of an overdose and needed emergency care, dkt. no. 109 at 162:4-21, 187:16-21. Failing to seek emergency care in that situation would plainly be deliberate indifference. <u>McKuhen v. TransformHealthRX, Inc.</u>, 790 S.E.2d 122, 135-36 (Ga. App. 2016) (holding a doctor who knew of life-threatening risks but failed to follow up with medical care, instead relying on jail personnel to monitor the inmate's condition, was deliberately indifferent).[17] It makes no difference that one could interpret all

---

[17] Waldron also argues that Griffin's claim fails because, without Dr. Sperry's testimony, Griffin cannot establish that "[the] delay in treatment was detrimental to Rewis, worsened his condition, or caused his death." Dkt. No. 89 at 22. As discussed above, <u>see</u> <u>supra</u> note 6, that argument fails because the deliberate delay in care for a serious medical condition is, itself, the constitutional violation which the defendant must "cause" to be liable. So while Griffin may or may not be able to show damages related to worsening injury, pain, or death (and— to be clear—the Court *does not* decide that now), that does not mean the constitutional claim itself fails.

this to mean that Waldron was aware at *that* point—rather than during the intake exam—that Rewis had "swallowed" rather than "taken" meth. That is a debatable inference, and at this stage all inferences must be made in favor of the nonmovant.

### CONCLUSION

In sum, Griffin's deliberate indifference claim against Nurse Waldron is viable, but the remainder of his claims are not. Thus, Defendants' motions for summary judgment, dkt. nos. 88, 92, 93, 94, 97, are **GRANTED**. Nurse Waldron's motion for summary judgment, dkt. no. 88, is **DENIED** as to Griffin's 42 U.S.C. § 1983 claim (Count Twelve).  The remaining parties are **ORDERED** to file a proposed consolidated pretrial order by December 13, 2022.

**SO ORDERED** this 30th day of September, 2022.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA